UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS DELIVERY ASSOCIATION, <br><br>PLAINTIFF, <br><br>v. <br><br>MARTHA COAKLEY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, <br><br>DEFENDANT. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.       Plaintiff Massachusetts Delivery Association ("MDA") brings this suit to declare void and permanently enjoin the enforcement of G.L. ch. 149, § 148B, the Massachusetts Independent Contractor Statute (the "Statute"), against delivery service companies because it prohibits them from utilizing independent contractors  in violation of the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA" or the "Act").  Congress enacted the FAAAA to ensure that transportation rates, routes, and service reflect "maximum reliance on competitive market forces" to stimulate "efficiency, innovation, and low prices" as well as variety and quality.  To prevent states from impermissibly restricting motor carriers engaged in interstate commerce, Congress employed broad preemption language in  the FAAAA, which prohibits states from "enacting or enforcing a law, regulation, or other provision . . . related to a price, route, or service" of any motor carrier.  Because the Massachusetts Independent Contractor Statute forces motor carriers to utilize employees only, it adversely affects "prices, routes, or

services" and is preempted by the FAAAA under the Supremacy Clause of the United States Constitution.

2.      To comply with the "B prong" of the Statute, delivery service companies must fundamentally change their business models and stop utilizing independent contractors or risk significant civil and criminal penalties.  For example, national companies that utilize independent owner operators to deliver product in the other 49 states are unable to do so in Massachusetts.  The "B prong" also prohibits independent owner operators from earning their livelihoods in Massachusetts because delivery service companies operating in Massachusetts are required to use employees only.  The prohibition on the use of independent contractors affects service delivery companies' staffing practices and a variety of costs and also imposes an impermissible burden on interstate commerce under the Commerce Clause of the United States Constitution.

**JURISDICTION AND VENUE**

3.      This action arises under the Constitution and laws of the United States, including the Supremacy Clause of the Constitution, Article VI, Cause 2; the Commerce Clause of the Constitution, Article 1, Section 8, Clause 3; and the FAAAA, 49 U.S.C. §§ 14501(c), 14504a(c), 14506.  This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

4.      This is a proceeding for declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201, 2202, and the Supremacy Clause.  This action presents an actual controversy within the Court's jurisdiction.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the claims asserted in this Complaint are based on events occurring in this district, and Defendant maintains offices and performs official duties within this district.

## PARTIES

6.      Plaintiff Massachusetts Delivery Association ("MDA") is a non-profit trade organization formed in association with the Messenger Courier Association of America to support businesses involved in the delivery service industry, to educate people and lawmakers about the industry and to promote the long standing reputation and business practices utilized within the industry.  MDA's membership is comprised of entities that provide same-day delivery services, who either engage independent contractor delivery drivers directly or contract with entities that engage independent contractor delivery drivers, to pick up and deliver products throughout the state and across state lines.

7.      The MDA has standing to bring suit on behalf of its members because: (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individualized members in the lawsuit.

8.      The MDA's members have standing to sue in their own right.  Because many MDA members engage independent contractor delivery drivers or contract with entities that engage independent contractor delivery drivers, they arguably violate the Statute and this places them in peril of an enforcement action and civil actions by private parties.  Indeed, several MDA members have been sued by private parties for allegedly misclassifying employees as independent contractors.  This threatened and actual injury is directly traceable to the existence and application of the Statute to them.  The declaratory and injunctive relief sought would redress this threatened and actual  injury.

9.      The interests that the MDA seeks to protect are germane to the MDA's purposes. The stated mission of the MDA is "[t]o support businesses involved in the same-day messenger

and courier industry, educate people and lawmakers about our industry and to promote the long

standing reputation and business practice utilized in the industry."

http://www.madeliveryassociation.com.  This mission includes protecting the industry's use of

independent contractors.  *Id.*

10.     Neither the claims that the MDA asserts nor the relief it requests requires the

participation of individual members in the lawsuit.  A state law's preemption as to one carrier

preempts it as to all carriers.

11.     Defendant Martha Coakley is sued in her official capacity as the Attorney General

of Massachusetts.  Massachusetts General Law ch. 149, § 2 authorizes the Attorney General to

enforce the provisions of Chapter 149, including § 148B (the "Statute").  Section (d) of the

Statute imposes civil and criminal penalties on those who violate its provisions.  By reference to

§ 27C of the same chapter, § 148B permits the Attorney General to impose a fine of up to

$25,000 or up to one year of imprisonment for a willful violation of the statute and a fine of

$10,000 or up to six months of imprisonment for a non-willful violation of the statute.

Subsequent violations can incur even greater fines and longer terms of imprisonment.  Mass.

Gen. Laws ch. 149, § 27C(a)(1) and (2).  Alternatively, § 27C(b)(1) empowers the Attorney

General to issue written warnings and civil citations, including a penalty of up to $25,000 for

each violation.

## GENERAL ALLEGATIONS

12.     The same-day delivery industry is an integral part of the American economy,

providing transportation of packages, medical supplies, bulk materials and documents among

businesses and corporations in the United States and beyond.  Roughly 80% of same-day ground

deliveries across the nation are made by independently owned and operated delivery service

companies which, in turn, rely on tens of thousands of independent contractor drivers.  Emphasis on time-critical delivery of packages based on customer demand, and often without advance notice, such as organs for life-saving transplants, distinguishes the expedited delivery service sector from other components of the delivery supply chain.

13.     Roughly seven thousand delivery service companies, which are primarily small businesses, comprise this multi-billion dollar sector.

14.     To meet their customers' demands, delivery service companies contract with entrepreneurial individuals on an "as-needed" basis to provide its important services.  These independent owner-operators pick up and deliver documents and packages that are time-critical, requiring prompt delivery.  Delivery service companies also deliver items that the customer will not entrust to other means of delivery due to its sensitive or fragile nature, such as medical supplies and even human organs for transplant patients. Because the customers' needs and demands dictate the timetable for package transportation, and these shipments are often time-sensitive and unscheduled, the use of independent contractors enables delivery service companies to maintain adequate service levels.

15.     MDA members regularly engage in interstate commerce.  Based on Massachusetts's close proximity to Rhode Island, Connecticut, New Hampshire, New York, Vermont and Maine, many MDA members offer delivery services that cross state lines.

16.     MDA members also engage in interstate commerce by providing the "last leg" of the delivery channel for the transportation of goods that traveled in interstate commerce.  For example, nation-wide companies ship products to warehouses in Massachusetts.  MDA members pick up the products at these warehouses and deliver them to the end customer.

**A.   THE MASSACHUSETTS STATUTE UNLAWFULLY BARS MDA MEMBERS FROM UTILIZING INDEPENDENT CONTRACTORS.**

17.    The Statute provides a three-part test which requires that all three elements (commonly referred to as prongs A, B, C) must exist in order for an individual to be classified other than as an employee. The burden of proof is on the employer, and the inability of an employer to prove any one of the prongs is sufficient to conclude that the individual in question is an employee.

18.    The second or B prong of the Statute provides that the service the individual performs must be "outside the usual course of business of the employer" in order for the individual not to be classified as an employee.

19.    The Attorney General has issued a formal advisory that provides that in enforcement actions, the Attorney General will consider "whether the service the individual is performing is necessary to the business of the employing unit or merely incidental in determining whether the individual may be properly classified as other than an employee under prong two."

20.    By way of example, the Attorney General's formal advisory provides:

- A drywall company classifies an individual who is installing drywall as an independent contractor. This would be a violation of prong two because the individual installing the drywall is performing an essential part of the employer's business.

- A company in the business of providing motor vehicle appraisals classifies an individual appraiser as an independent contractor. This would be a violation of prong two because the appraiser is performing an essential part of the appraisal company's business.

- An accounting firm hires an individual to move office furniture. Prong two is not applicable (although prongs one and three may be) because the moving of furniture is incidental and not necessary to the accounting firm's business.

- The Attorney General's advisory cited with apparent approval the notion that "[w]hen one is in the business of dispatching limousines, the services of chauffeurs are provided in the usual course of business because the act of driving is necessary to the business."

21.    Based on the plain language of the Statute and the Attorney General's interpretation of it in its formal advisory, no MDA member can satisfy the B prong with respect to independent contract drivers because the MDA's members are all in the delivery service industry.

**B.    THE BROAD PREEMPTIVE REACH OF THE FAAAA**

22.    The FAAAA provides in relevant part that "a State . . . may not enact or enforce a law, regulation, or other provision . . . related to a price, route or service" of any motor carrier. 49 U.S.C. § 14501(c).

23.    The FAAAA was based on Congressional findings that the regulation of intrastate transportation of property by the states had "imposed an unreasonable burden on interstate commerce; [and] impeded the free flow of trade, traffic, and transportation of interstate commerce."  Public Law 103-305, section 601(a).  Through the FAAAA, Congress sought to ensure that interstate carriers are able to provide services subject exclusively to a uniform body of federal law, and not by a "patchwork" of individual states' laws and regulations.  H.R. Conf. Rep.No. 103-677, § 601, at 87 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1759.  Congress thereby intended to remove obstacles to "national and regional carriers attempting to conduct a standard way of doing business."

**C.    THE B PRONG AFFECTS CARRIERS' PRICES, ROUTES AND SERVICES.**

24.    The application of the B prong to delivery service companies bars these businesses from utilizing independent contractors.  Massachusetts's requirement that these delivery service companies utilize employees rather than independent contractors directly affects the prices, routes, and services of motor carriers.

25.    The broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' prices.  The requirement that MDA members use

employees rather than independent contractors has a significant affect on prices. Because

demand in the industry fluctuates, requiring same-day delivery and courier companies to use

employees would force them to establish and maintain an employee workforce to meet peak

demand, even when many of the employees would have little or no work at other times. The

same-day delivery and courier companies would need to considerably build their infrastructure

(vehicles, administrative staff, maintenance staff, garages, etc.) and take on a large contingent of

employees for the exact same number of deliveries. Having to maintain employees on payroll to

meet unpredictable and time-critical demands, rather than engaging independent contractors on

an on-needed basis is inefficient, costly and wasteful. The same is true with respect to the other

administrative burdens and unnecessary overhead. Moreover, requiring MDA members to

convert their independent contractor delivery drivers to employees would compel them to take

on additional employment-related costs, including state and federal social security taxes and the

state unemployment insurance tax. As a result of these and other changes, these companies

would need to raise prices to defray these substantial expenses.

      26.    Similarly, the broad preemptive scope of the FAAAA precludes the enactment

and enforcement of state laws related to carriers' routes. As independent contractors, many

delivery drivers accept packages from different companies that have deliveries along their routes,

particularly for more remote routes, to maximize their earning potential. This enables delivery

service companies to make deliveries to remote areas in a cost-effective manner. If delivery

service companies are required to treat all of their delivery drivers as employees, it would

impede if not bar them from "pooling their resources." Each company would bear the burden of

employing drivers to deliver packages to remote and less-populated areas alone. Many may

determine that such deliveries are economically unfeasible and decrease the frequency of or eliminate such routes altogether, which would have a significant affect on routes.

27.     Finally, the broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' services.  The B prong of the Massachusetts independent contractor statute violates that mandate because it regulates the manner in which delivery service companies must operate by effectively barring motor carriers from using independent contractors in Massachusetts.  In contrast to larger transportation industry leaders such as FedEx and UPS, which operate on a national level, the same-day delivery service industry exists to offer same-day expedited service to local markets for time-sensitive freight: an industry dependent on the use of independent contractors.  If Massachusetts prohibits these companies from utilizing independent contractors, it will affect service because it will drive these smaller companies out of business and time-critical delivery service may be rendered unavailable.

## COUNT ONE—FAAAA PREEMPTION

28.     Plaintiffs incorporate by reference all of the foregoing paragraphs as though set forth fully herein.

29.     Congress has the power to enact the "supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, § 3, cl. 2.

30.     An actual controversy exists among the parties because delivery service companies cannot satisfy the B prong of the Massachusetts independent contractor statute, and therefore are forced to staff their businesses with employees only, which is preempted by the FAAAA.

31.     Plaintiff's members fear the civil and criminal penalties and enforcement actions authorized under G.L. ch. 149 § 148B(d), as well as costly litigation, including class actions initiated by private parties who claim to be improperly classified as independent contractors under the statute.

32.     The threat that this preempted law will be enforced against the MDA's members, and the fact that it currently is being used to challenge their use of independent contractors in private class actions, constitutes an irreparable harm that makes injunctive relief appropriate.  In addition to the imminent enforcement of the statute, its unconstitutionality itself reinforces the irreparable harm the carriers face.

33.     The harm is irreparable for the additional reason that the Eleventh Amendment to the United States Constitution bars an award of retrospective monetary damages against the State or the individual defendant acting in his official capacity.

34.     Plaintiff is entitled to injunctive relief against enforcement of the statute because its members are and will continue to suffer irreparable harm from enforcement of the B prong of the statute.

## COUNT TWO—INTERSTATE COMMERCE CLAUSE

35.     Plaintiff incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

36.     The Commerce Clause of the Constitution, Article 1, Section 8, Clause 3 protects the right to engage in interstate commerce free of undue burdens and discrimination by state governments.

37.     The burden imposed by banning the use of legitimate independent contractors in the delivery service industry is clearly excessive in relation to the putative local benefit of

ensuring that non-legitimate independent contractors properly receive the protections to which they are entitled as employees.

38.     The B prong establishes requirements that unlawfully require delivery service companies to exclusively utilize employees rather than independent contractors.

## COUNT THREE—28 U.S.C. §§ 2201, 2202

### (DECLARATORY RELIEF)

39.     Plaintiff incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

40.     Plaintiff brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to obtain a declaration of their members' rights with respect to the B prong of the Massachusetts independent contractor statute.

41.     As alleged above, an actual controversy has arisen and now exists within the meaning of 28 U.S.C. § 2201, as to whether the B prong of the Massachusetts independent contractor statute is preempted by the FAAAA pursuant to the Supremacy Clause of the United States Constitution.

42.     The Court has the power to adjudicate the rights of the parties with respect to this controversy and should grant declaratory relief under 28 U.S.C. § 2201.

**WHEREFORE, plaintiff respectfully requests:**

(a)     a declaration that Mass. Gen. Law ch. 149, § 148B is preempted by federal law under the FAAAA and the Supremacy Clause;

(b)     a permanent injunction enjoining defendant from enforcing Mass. Gen. Law ch. 149, § 148B against motor carriers, including delivery service companies;

(c)     an order granting plaintiff the costs incurred to bring forth this Complaint;

and

(d)     such other and further relief as this Court may deem appropriate under law

and equity.

Respectfully submitted,

MASSACHUSETTS DELIVERY
ASSOCIATION,

By its attorneys,

/s/ David C. Casey
David C. Casey (BBO #077260)
Walter C. Hunter (RI BAR #2775)
Carie A. Torrence (BBO #675237)
Vanessa K. Hackett (BBO #673493)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
dcasey@littler.com
whunter@littler.com
ctorrence@littler.com
Dated: September 7, 2010                vhackett@littler.com