UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| MASSACHUSETTS DELIVERY ASSOCIATION, | ) ) ) | |
| PLAINTIFF, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 1:10-cv-11521-RGS |
| MARTHA COAKLEY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, | ) ) ) ) | |
| DEFENDANT. | ) ) | |

_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS ON THE BASIS OF *YOUNGER* ABSTENTION**

The Defendant Attorney General of Massachusetts submits this Memorandum in Support of her Motion to Dismiss plaintiff Massachusetts Delivery Association's ("MDA's") action for declaratory and injunctive relief. The Attorney General seeks dismissal pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because this suit is an attempted "end run" around ongoing Massachusetts Superior Court proceedings by private parties against MDA's individual members that the Attorney General has authorized. In two of these proceedings, Superior Court judges have in fact *rejected* the very claim made by MDA -- that the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA"), 29 U.S.C. § 14501(c), preempts M.G.L. c. 149, § 148B's rules regarding the classification of workers as "employees" rather than "independent contractors." Instead of pressing appeals of those rulings through the state-court process, the delivery companies have apparently turned to the current federal suit brought by their trade association, MDA.

This "second front" should not be allowed to proceed, because the criteria for *Younger* abstention are all satisfied.  First, MDA's Complaint admits that there are ongoing state judicial proceedings involving its individual members and that those proceedings raise exactly the same issues as the present case.  Second, the Commonwealth has a strong state interest in both (1) ensuring the proper classification of workers by companies operating in Massachusetts and (2) preserving the integrity of its judicial system.  Third, MDA's individual members have a full opportunity to adjudicate their claims in state court, against a fully developed factual backdrop specific to each company's particular business model.  The Court should therefore dismiss this action without prejudice and without reaching the merits of the preemption claim.

## I.    RELEVANT BACKGROUND.

### A.  Nature of the Claims.

MDA asks the Court to enjoin permanently the Attorney General's enforcement of M.G.L. c. 149, § 148B, against any delivery service company operating in Massachusetts.  Complaint, ¶ 1.  MDA argues that the Commonwealth's authority to bring such enforcement actions, which seek to remedy the widespread problem of misclassifying employees as independent contractors, is preempted by the FAAAA.  *Id*. at ¶ 1.  MDA also alleges that enforcement of Section 148B, violates Article 1, Section 8, Clause 3 of the Commerce Clause. *Id*. at ¶¶35-38.

The FAAAA preemption standard is fact-specific:  whether the challenged state law "ha[s] a connection with, or reference to" a motor carrier's "price, route, or service."  49 U.S.C. § 14501(c)(1); *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 370-371 (2008).  The Complaint, however, mounts a solely facial claim.  It does not disclose even the identity of the individual delivery service companies comprising MDA, let alone the factual

details necessary to illuminate the details of their individual business models or to state with any precision the extent to which each individual company's price, route, or service is affected by M.G.L. c. 149, § 148B.  Devoid of this critical information, the Complaint merely hints at assumptions of general economic harms to unidentified delivery service companies.  As a result, adjudicating this case may require a substantial discovery period.  It may also necessitate a company-by-company fact-intensive inquiry of the particular components of each MDA member's business model to determine whether FAAAA preemption is appropriate as to it.

### B.  The Ongoing State Proceedings.

The Complaint again does not identify the individual companies on whose behalf MDA brings its claim.  However, in two different paragraphs, MDA admits that its unidentified individual members are currently subject to "private class actions[.]"  Complaint ¶¶ 8 & 32.  Specifically, paragraph 8 of the Complaint alleges that "several MDA members have been sued by private parties for allegedly misclassifying employees as independent contractors."  *Id*., ¶ 8.  Paragraph 32 similarly states that "[M.G.L. c. 149, § 148B] currently is being used to challenge [MDA's members'] use of independent contractors in private class actions[.]"  *Id*. at ¶ 32.  The referenced state-court actions are proceeding because the Attorney General has authorized them under the powers given her by M.G.L. c. 149, § 150, and they necessarily present the preemption issue in the context of each particular company's unique business model.[1]  MDA's apparent purpose is to supplant these multiple state proceedings, each based on one company's specific facts, with the current generic suit.

---

[1]    Pursuant to M.G.L. c. 149, § 150, a worker claiming to be aggrieved by misclassification as an independent contractor may bring an action against his employer.  However, prior to filing such a complaint, the worker first must seek the Attorney General's permission.  The complaint can only be filed in Superior Court if either the Attorney General has assented in writing or 90 days have passed since the approval was sought.  *Id*.

As explained in the Affidavit of Jocelyn Jones, Acting Chief of the Fair Labor Division of the Office of the Attorney General ("Jones Affidavit"), there are currently three such actions pending in Superior Court. The first is *Derochers v. Staples, Inc.*, MICV 2009-04845, a class action by ten former package delivery drivers who worked for Staples and allege that it misclassified them as independent contractors, in violation of Section 148B. The second case -- *Oliveira v. Advanced Delivery Systems, Inc.*, MICV 2009-01311 -- involves a similarly situated plaintiff who claims that a delivery service company misclassified him as an independent contractor. The third case is *Reynolds v. City Express, Inc.*, SUCV 2010-02655, an action by two workers alleging misclassification by two defendant delivery service companies.

Significantly, the defendant delivery companies in all three Superior Court actions have raised as a defense the same FAAAA preemption for which MDA currently seeks declaratory judgment. *See, e.g., Staples, Inc.*, at *1; *Advanced Delivery Systems, Inc.*, at *4-7; *see generally*, Jones Aff., ¶¶ 16-18. Moreover, in the two most procedurally advanced matters, the Superior Court, after considerable analysis of the preemption defense, *see Staples*, at *2-5; *Advanced Delivery Systems, Inc.*, at *4-7, twice declined to adopt it.[2] *See Staples*, at *2-6 (Order dated June 7, 2010); *Advanced Delivery Systems, Inc.*, at *4-7 (Order dated July 16, 2010). These two cases remain pending in Superior Court for further proceedings relating to the alleged misclassification under M.G.L. c. 149, § 148B. In one of the cases, the defendant company has filed an interlocutory motion, pursuant to Mass. R. Civ. P. 64, seeking to report the preemption issue to the Massachusetts Appeals Court. *See Advanced Delivery Systems,* Docket, Paper 16 (August 19, 2010, Motion for Report of Case to the Appeals Court).

---

[2]     Copies of the two Superior Court decisions are attached as Exhibit 5 and 6 to the Jones Affidavit.

Additionally, this Court currently has before it three similar cases that were originally filed in the Superior Court and then removed. *See Arrigo v. Contractor Management LLC*, 1:10-cv-11650-MLW (removed on September 28, 2010); *Reynolds v. World Courier Ground, Inc.*, 1:10-cv-11060-JLT (removed on June 22, 2010); *Versolato v. Office Depot*, Inc., 1:10-cv-10379-PBS (removed on March 3, 2010). In two of the removed cases, the state-court plaintiffs have moved to remand to the Superior Court. *See Contractor Management*, 1:10-cv-11650-MLW (docket, paper 4); *World Courier Ground*, 1:10-cv-11060-JLT (docket, paper 11). The motions to remand remain pending.

### C. The Commonwealth's Interest in the Proper Classification of Workers.

As explained in the Jones Affidavit, the Attorney General, pursuant to her authority in M.G.L. c. 149, § 150, has authorized the private suits referenced above as part of her enforcement of Section 148B. Commonly known as the "Massachusetts Misclassification Law" and "Massachusetts Independent Contractor Law," Section 148 addresses the persistent problem of companies mischaracterizing employees as "independent contractors" and thereby depriving them of the significant benefits that accompany employee status. Jones Aff., ¶¶ 4, 8. It sets forth a three-part test to determine whether an employer has impermissibly classified a worker as an independent contractor (or as something else other than an employee). M.G.L. c. 149, § 148B. Where an employer cannot meet its burden and has violated one of the wage and hour laws enumerated in § 148B(d),[3] the Attorney General may seek civil and criminal penalties. M.G.L. c. 149, § 148B(d).

---

[3] The sections enumerated therein concern a panoply of fair labor related standards. *See* M.G.L. c. 149 §§ 1 *et. seq.* (establishing the Commonwealth's wage and hour laws); M.G.L. c. 151, §§ 1, 1A, 1B, 2B, 15 & 19 (establishing the Commonwealth's minimum wage, overtime, and payroll laws); M.G.L. c. 62B, §§ 1 *et. seq.*; M.G.L. c. 152, § 14 (workers' compensation provision punishing knowing misclassification of an employee).

As articulated in a 2008 Advisory Opinion, the Attorney General considers the proper classification of workers to be of "paramount importance to the Commonwealth."  *See* Jones Aff., Exh. 1 at 1 ("2008 Advisory").[4]  This is because employers who misclassify workers thereby often deprive them of wage protections and assurances, as well as the protection of unemployment insurance, the benefit of workers' compensation insurance, and access to employer-provided health benefits.  *See id*. at 1.  Moreover, misclassification directly affects the Commonwealth itself, because an employer with misclassified workers neither withholds payroll taxes (thus depriving the Commonwealth of a significant source of revenue) nor contributes to the Workers' Compensation Trust Fund or the Division of Unemployment Assistance Fund.  *See id*. at 1.  In addition, employers who misclassify workers create a distinct competitive imbalance in the Massachusetts marketplace, as companies that comply with the law are effectively required to "subsidize" those that do not.  *See id*. at 1.  These considerations are reiterated in the Exhibits to the Jones Affidavit, specifically Executive Order No. 499[5] and the Joint Task Force's

---

[4]      "[A]s the Attorney General's office is the department charged with enforcing the [Commonwealth's] wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference . . . . ."  *See Smith v. Winter Place LLC*, 447 Mass. 363, 367-368, 851 N.E. 2d 417, 421 (2006).

[5]      For example, Executive Order No. 499, attached as Exhibit 2 to the Jones Affidavit, provides:

> [T]he underground economy and, in particular, the practice of employee misclassification: (1) exploits vulnerable workers and deprives them of legal benefits and protections; (2) gives unlawful businesses an unfair competitive advantage over lawful businesses by illegally driving down violators' taxes, wages, and other overhead costs; (3) defrauds the government of substantial tax revenues; and (4) harms consumers who suffer at the hands of unlicensed businesses that fail to maintain minimum levels of skills and knowledge.  [A] recent study based on audits of Massachusetts unemployment records for construction employers between 2002 and 2005 found that up to 14% of the employees covered by the audits were estimated to have been misclassified by employers.

Annual Reports for 2009 and 2010. *See* Jones Aff., ¶¶ 4-12 & Exhs. 2 at pp. 1-2 (Executive

Order) & 3 at pp. 2-3 (2010 Annual Report ).

As further noted in the Jones Affidavit, the Attorney General has authorized almost 2,000

private actions per year over the last several years. Jones Aff., ¶ 15. Given the Attorney

General's own finite resources for enforcement of wage and hour violations, these statutorily

authorized private actions play a critical supplemental role in the Commonwealth's overall

efforts to combat misclassification. Jones Aff., ¶ 15.

## II.    THE *YOUNGER* STANDARD.

"The *Younger* doctrine is based on principles of comity, and unless there are

extraordinary circumstances, it instructs federal courts not to 'interfere with ongoing state-court

litigation.'" *Rossi v. Gemma*, 489 F.3d 26, 34 (1st Cir. 2007). Accordingly, under *Younger*, a

federal court must abstain "if (1) there is an ongoing state judicial proceeding involving the

federal plaintiff that (2) implicates important state interests and (3) provides an adequate

opportunity for the federal plaintiff to assert his federal claims." *Colonial Life & Accident Ins.

Co. v. Medley*, 572 F.3d 22, 26 (1st Cir. 2009) (internal citations omitted). *See also Bettencourt

v. Bd. of Reg. in Medicine*, 904 F.2d 772, 777 (1st Cir. 1990). Moreover, the issue of *Younger*

abstention must be resolved prior to inquiry into the merits of the underlying claim. *Colonial

Life*, 572 F.3d at 26.

*Younger* applies with full force even where the defendant in the state proceeding asserts

that the charges against it are preempted by federal law. *New Orleans Public Serv., Inc. v.

Council of City of New Orleans*, 491 U.S. 350, 364-65 (1989) ("*NOPSI*"); *Colonial Life*, 572

F.3d at 26. Even a substantial claim of federal preemption is insufficient to overcome *Younger*,

*see Local Union No. 12004 v. Commonwealth of Massachusetts*, 377 F.3d 64, 78 (1st Cir. 2004), and the doctrine remains applicable except in the rare circumstance where the claim of preemption is "facially conclusive." *Colonial Life*, 572, F.3d at 26-29.

This exception is truly narrow, as preemption cannot be "facially conclusive" unless it is "readily apparent" from the face of the document that initiates the state proceeding. *See Chaulk Services, Inc. v. Mass. Comm'n Against Discrim.*, 70 F.3d 1361, 1370 (1st Cir. 1995) (preemption not "readily apparent" in a discrimination charge submitted by employee to the MCAD). Preemption is *not* "facially conclusive" where either (1) factual inquiry beyond the face of the complaint is required[6] or (2) the defense turns on the answer to an unsettled legal question, such as an issue of first impression. *Colonial Life*, 572 F.3d at 26-29; *see also NOPSI*, 491 U.S. at 367; *Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874, 880 (8th Cir. 2002); *Bunning v. Commonwealth of Kentucky*, 42 F.3d 1008, 1011 (6th Cir. 1994).

## III. THE CRITERIA FOR *YOUNGER* ABSTENTION ARE ALL MET IN THIS CASE.

*Younger* thus requires that defendants in ongoing state proceedings press their FAAAA preemption defenses in that forum and, if necessary, on appeal. It therefore also dictates that this federal action, brought by an alter ego of the state-court defendants, be dismissed without prejudice. *See Woodfeathers, Inc. v. Washington County, Or.*, 180 F.3d 1017, 1021-22 (9th Cir. 1999) (holding district court should have abstained, under *Younger*, on ruling whether FAAAA preempted county solid waste ordinance where state judicial action was pending and federal

---

[6]    "[B]ecause questions of federal preemption frequently abound in cases where *Younger* abstention is sought, it is important for a court to refuse to abstain only when the preemptive force of the federal law at issue is readily discernable from the pleadings." *We Are America/Somos America Coalition of Arizona v. Maricopa County Bd of Supervisors*, 2007 WL 2775134, *4 (D.Ariz. 2007); *see also Aluminum Co. of America v. Utilities Comm'n of State of North Carolina*, 713 F.2d 1024, 1030 (4th Cir. 1983) (same re *Burford* abstention).

preemption was not readily apparent); *Federal Express Corp. v. Tennessee Public Serv. Commission*, 925 F.3d 962, 967-969 (6th Cir. 1991) (applying *Younger* to dismiss federal court action that alleged that the Airline Deregulation Act's preemption provision -- which is nearly identical to the FAAAA's -- preempted a state law regulating motor carriers).

### A.      There are Ongoing State Judicial Proceedings Involving the Alter Ego of the Federal Plaintiff.

The first *Younger* condition requires that there be an "ongoing state judicial proceeding involving the federal plaintiff." *Colonial Life*, 575 F.3d at 26.  This condition is satisfied here because there are three ongoing private actions in state court against MDA's individual members, all authorized by the Attorney General, and all claiming misclassification under M.G.L. c. 149, § 148B.  MDA has admitted that its members are subject to these proceedings and that the actions concern allegations of misclassification.  *See* Complaint ¶¶ 8, 32.  For the reasons that follow, these admissions establish that there are ongoing state judicial proceedings involving the alter ego of the federal plaintiff.

### i.      MDA is the Alter Ego of the Defendants in the State Proceedings.

Any contention that *Younger* abstention does not apply in this instance because MDA is not a named defendant in the state-court actions is misplaced.  The Tenth Circuit has explained that "when in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230-31 (10th Cir. 2004).  *See also Hicks v. Miranda*, 422 U.S. 332, 334-35 (1975) (applying *Younger* to federal court challenge by theater owners, when there was an ongoing state criminal proceeding against the theaters' employees).  The rationale underlying this "*alter ego*" principle is developed in *Cedar Rapids Cellular Tel., L.P. v. Miller*, where a corporation unsuccessfully sought to avoid *Younger*'s reach by having its subsidiaries

bring suit in federal court to block a state proceeding in which it was involved.  280 F.3d 874,

882 (8th Cir. 2002).  As the Eighth Circuit explained, the *Younger* doctrine requires the reviewing

court to look beyond the differing names of the state-court defendants and federal plaintiffs and

to take a "closer look" at the nature of the connections between them.  *Id*. at 881.  Thus, even

when the federal plaintiff is not explicitly named in the state proceeding, *Younger* will apply if

the federal plaintiff's interests are so closely intertwined with those of the state-court defendant

that they are indistinguishable.  *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65,

83-84 (2nd Cir. 2003) (applying *Younger* to dismiss federal claims by two parties not subject to

the pending state-court proceeding because their claims were "entirely derivative" of and

inextricably intertwined with the proceeding's subject); *Stivers v. State of Minnesota*, 575 F.2d

200, 203 (8th Cir. 1978) (*Younger* applies to suit by federal plaintiffs who were "co-members" of

the legal association subject to state proceeding).

     That MDA is the alter ego of the individual state defendants is obvious from the

allegations in the Complaint, which admit that MDA is

> a non-profit trade organization formed in association with the Messenger Courier
> Association of America to support business involved in the delivery service
> industry, to educate people and lawmakers about the industry[,] and to promote
> the long standing reputation and business practices utilized within the industry.

Complaint, ¶ 6.  Thus, MDA, by its own admission, does not engage in the actual delivery

business itself.  *Id*.  That business is instead left to its membership, which is "comprised of

entities that provide same-day delivery services . . . ."  *Id*.  Phrased differently, MDA has

admitted that it is currently asserting the rights of its membership, which includes exactly the

same entities that are defendants in multiple state judicial proceedings seeking to enforce Section

148B.  *Id*. at ¶¶ 8, 32.  *See Spargo*, 351 F.3d at 83-84; *Gajon Bar & Grill, Inc. v. Kelly*, 508 F.2d

1137, 1322 (2nd Cir. 1974) (applying *Younger* against corporation asserting First Amendment

right because the right belonged to its manager, who was the actual subject of the pending state criminal proceeding).[7]  In view of these admissions, MDA cannot dispute that its interests are "entirely derivative" of the state-court defendants and that it is merely their alter ego.[8]

Although the first *Younger* condition requires *only* that there be an "ongoing state judicial proceeding involving the federal plaintiff[,]" *see Colonial Life*, 575 F.3d at 26, there is also a statutorily defined interrelationship between the Attorney General and the state-court plaintiffs. M.G.L. c. 149, § 150.  As explained in greater detail below, this interrelationship is heightened due to (1) the Commonwealth's interest in combating misclassification, (2) the Attorney General's interest in authorizing actions to supplement her direct enforcement efforts, and (3) the practical impact of the relief sought by MDA.

> ii.     **The *Younger* Doctrine Applies Even Though the State Proceedings are Between Private Parties.**

Any contention that *Younger* abstention does not apply is this instance because the state proceedings are between private parties is misplaced.  In *Pennzoil Co. v. Texaco, Inc.*, the Supreme Court held that *Younger* abstention was required when federal judicial intervention would interfere with an ongoing state-court civil proceeding between private parties, so long as there was a significant state interest in the proceeding.  481 U.S. 1, 11-14 (1987) (pending post-judgment state-court proceeding relating to enforcement of judgment satisfies *Younger's* first

---

[7]     MDA indeed must make these admissions, to establish associational standing and thereby attempt to sue on behalf of its members.  *See, e.g., College of Dental Surgeons of Puerto Rico v. Connecticut General Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009); *Maine People's Alliance v. Mallinckrodt, Inc.*, 471 F.3d 277, 283 (1st Cir. 2006).

[8]     Under the circumstances, *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), is distinguishable.  *Doran* held that state proceedings against one corporation did not bar two other corporations with similar business models but distinct ownership and management from seeking relief in federal court.  *Id.* at 930-931.  Here, MDA has specifically admitted that its membership includes entities that are currently subject to ongoing state proceedings.  *See* Complaint ¶¶ 8, 32.

component).  Following *Pennzoil*, this Circuit initially acknowledged (*see Bettencourt*, 904 F.2d at 777 n.6) and then repeatedly recognized that *Younger* can be invoked even though the ongoing state-court civil proceedings were not initiated by the state.  *See Rossi v. Gemma*, 489 F.3d 26, 35 (1st Cir. 2007) (lien enforcement action between private parties qualifies as ongoing state judicial proceeding); *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 69-70 (1st Cir. 2005) (declining to apply *Younger*, but acknowledging the first component can encompass state-court civil proceedings); *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 635 & 638 (1st Cir. 1996) (ongoing state court paternity action between private parties is "undeniably [an] ongoing state judicial proceeding").  This recognition that state court actions between private parties can constitute the ongoing judicial proceeding satisfying the first part of the *Younger* test is further illustrated in recent decisions of other Circuits.  *See Dongon v. Banar*, 363 Fed. Appx. 153, 156 (3rd Cir. 2010) (ongoing state court proceeding relating to resolution of private child support dispute satisfies the first *Younger* condition); *Taylor v. Marion Cty. Circuit Court No. 1*, 284 Fed. Appx. 354, 357 (7th Cir. 2008) (rejecting argument that ongoing private state court civil proceeding did not satisfy the first *Younger* condition because "a lawsuit filed in a state court is undisputably judicial in nature, regardless of the parties involved."); *Parekjo v. Dunn Cty. Circuit Court*, 209 Fed. Appx. 545, 546-547 (7th Cir. 2007) (state court divorce proceeding satisfies the first *Younger* condition); *Unified Sch. Dist.*, 392 F.3d at 1228  ( "the *Younger* doctrine also can apply to a state-court civil proceeding . . . including state-court suits between two private parties[.]") (citations omitted); *Chapman v. Barcus*, 372 Fed. Appx. 899, 902 (10th Cir. 2010) (state custody matter between private parties an ongoing state proceeding that satisfies the first *Younger* condition).[9,10]  The general tenor of these cases -- that *Younger*

---

[9]         *See also Stratton v. Massachusetts*, 2008 WL 4427203, *6-7 (D. Mass. 2008) (applying

abstention is appropriate in civil cases where the "fundamental workings" of the state's judicial

system "are put at risk by the relief asked of the federal court[,]" *Rio Grande*, 397 F.3d at 70 -- is

applicable here, because MDA has asked the Court for relief that would effectively re-establish

the viability of a preemption defense in the ongoing private enforcement proceedings against

MDA's presumptive individual members, thereby supplanting the Commonwealth's appellate

process.  *See id.* at 68-69 ("*Younger* is grounded in notions of comity:  the idea that the state

courts should not, in certain circumstances, be interfered with.").  Moreover, the cases cited just

as readily dismiss state defendants from the federal suits as they do private ones, even though the

dismissed state defendants were not themselves plaintiffs in the underlying state-court actions.

*See, e.g., Rossi*, 489 F.3d at 35; *Chapman*, 372 Fed. App. at 900-902 (applying *Younger* in case

alleging that judge in ongoing state-court proceeding was part of conspiracy aimed at infringing

federal- court plaintiff's constitutional rights).

     **iii.**     **The *Younger* Doctrine Applies Even Though MDA Has Not**
                 **Specifically Requested Relief from the State Proceedings.**

---

*Younger* to dismiss requests for equitable relief where relief would interfere with ongoing state domestic relations proceedings); *Peterson v. Fox*, 488 F.Supp.2d 14, 17-18 (D. N.H. 2007) (applying *Younger* to dismiss federal action that would interfere with ongoing state court proceeding between private parties over child custody); *Colassi v. Looper*, 2008 WL 2115160, *1-2 (D. N.H. 2008) (same); *Harrison v. Capital Group Cos., Inc.*, 2009 WL 3272071 (C.D. CA 2009) (applying *Younger* to an ongoing state civil proceeding between private parties); *Graham v. Emery County*, 2006 WL 1889777, *2 (D. Utah 2006) (noting "the *Younger* doctrine also applies to a state-court civil proceeding, including state-court suits between two private parties.").

[10]     The courts addressing these cases have applied *Younger* fully, in the process separately analyzing each of *Younger*'s three criteria.  Thus, that a number of the cited cases happen to have originated as state-court child custody proceedings is not of consequence, as the Attorney General relies on these cases only to establish that *Younger*'s first prong encompasses state-court proceedings between private parties.   Any contention concerning domestic relations exceptions to federal jurisdiction is more appropriately labeled a state interest, which, of course, falls under a separate prong of the *Younger* analysis.

Finally, the first *Younger* condition is satisfied even though the relief that MDA presently

seeks (a permanent injunction banning the Attorney General's enforcement of M.G.L. c. 149,

§ 148B, *see* Complaint, p. 11) is different in form from the dismissals sought by the company

defendants in the state-court cases.  Although MDA's request for relief is crafted in a way that

makes it appear distinct from the state proceedings,[11] it actually will result in this Court

interfering with those proceedings.  *See Rio Grande*, 397 F.3d at 70 ("interference . . . clearly

exists where the plaintiff is seeking a declaratory judgment that a prosecution, or the statute

serving as its basis, is illegal or unconstitutional"); *Cedar Rapids*, 280 F.3d at 882 (finding

interference under *Younger* because federal plaintiffs could use a federal injunction to obstruct

enforcement of any remedy granted in the state proceeding).

By way of elaboration, if this Court were to enjoin the Attorney General from directly

enforcing Section 148B, that ruling may call into question her authority to authorize future

private action similar to those now pending against MDA members.  More significantly, such an

order could also call into question both the Attorney General's earlier authorization of the private

actions now pending in the Superior Court and the Superior Court's preemption rulings in two of

those suits.  This, of course, could provoke the individual state-court defendants to request that

the Superior Court reconsider its earlier rulings.  *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th

Cir. 1998) (*Younger* definition of interference encompasses federal result that "undermine[s]"

state court result or "preclude[s]" consideration of issues by state court).  Additionally, with such

a federal ruling then in hand, the individual state defendants will have obtained a highly

significant advantage, given the *stare decisis* doctrine, when they press their preemption defense

---

[11]      The Attorney General acknowledges that several of MDA's individual members are the subject of an ongoing investigation by her office.

in the state appellate courts.  As such, MDA's requested declaratory and injunctive relief is

inextricably intertwined with the ongoing state proceedings; it interferes with the state judiciary's

application of state law and is thus more appropriately within the province of the

Commonwealth's trial and appellate courts.  *NOPSI*, 491 U.S. at 369 (explaining *Younger*

applies while case moves through the appellate process).[12]

>       **B.      Eradicating Misclassification Implicates an Important State Interest.**

The second *Younger* criterion -- the implication of an important state interest -- is

satisfied here for three reasons.  First, the Massachusetts Legislature enacted M.G.L. c. 149,

§ 148B, specifically to address the problem of misclassification and to provide sanctions.  As

referenced in the Attorney General's 2008 Advisory Opinion on Section 148B, the proper

classification of workers is of "paramount importance to the Commonwealth."  *See* 2008

Advisory at 1.  *See also San Jose Silicon Valley Chamber of Commerce Political Action*

*Committee v. City of San Jose*, 546 F.3d 1087, 1094 (9th Cir. 2008) (quoting *Baffert v. Cal.*

*Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003)) ("The importance of the interest is

measured by considering its significance broadly, rather than by focusing on the state's interest

in the resolution of an individual's case.").  Proper classification is critical because

*mis*classification (1) deprives workers of the benefits of the Commonwealth's laws concerning

wage protections and workers' compensation insurance; (2) deprives the Commonwealth of

revenues from payroll taxes and contributions to the Workers' Compensation Trust Fund and the

Division of Unemployment Assistance Fund; and (3) creates a distinct competitive imbalance in

the Massachusetts marketplace.  *See* 2008 Advisory at 1.  These considerations, which are

reiterated in the Jones Affidavit, Executive Order No. 499, and the Joint Task Force's Annual

---

[12]        Such a decision may also interfere with the two currently federal proceedings --
*Contractor Management* and *World Courier Ground* -- where the state-court plaintiffs have
moved to remand the matter to Superior Court.

Reports for 2009 and 2010, *see* Jones Aff., ¶¶ 4-12 & Exhs. 2 at pp. 1-2 (Executive Order) & 3 at

pp. 2-3 (2010 Annual Report ), are of the type that have traditionally satisfied this prong of the

*Younger* test.  *See Colonial Life*, 572 F.3d at 26 (prohibiting "unlawful employment

discrimination" qualifies as an important state interest under *Younger*); *Advanced Auto

Transport, Inc. v. Pawlenty*, 2010 WL 2265159, *4 (D. Minn. 2010) ("The state proceedings

now under way implicated [state's] important state interest in effectuating its employment laws,

particularly those relating to the provision of workers compensation insurance and ensuring that

any employers provide insurance."); *Townsend v. Calderone*, 2010 WL 1999588, *2 (D. N.J.

2010) (administration of workers' compensation system is an important state interest); *Hartford

Enterprises, Inc. v. Coty*, 529 F. Supp. 2d 95, 99 (D. Me. 2008) (same).

Second, the Commonwealth has a significant state interest in preserving the Legislature's

carefully crafted remedial scheme to ensure the enforcement of its wage and hour laws.  *See

Moore v. Sims*, 442 U.S. 415, 427 (1979) ("The breadth of a challenge to a complex state

statutory scheme has traditionally militated in *favor* of abstention, not *against* it.") (emphasis in

original); *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 n.8 (1984) ("in

our federal system, it is preferable that constitutional attacks on state statutes be raised

defensively in state-court proceedings rather than in proceedings initiated in federal court.").  As

explained in the Jones Affidavit, the Attorney General, pursuant to M.G.L. c. 149, § 150, has

authorized almost 2,000 private actions per year over the last several years.  Jones Aff., ¶ 15.

Given the Attorney General's own finite resources for pursuing wage and hour violations, these

statutorily authorized actions reflect the Legislature's deliberate effort to expand the enforcement

net and play an integral role in the Commonwealth's overall efforts to combat misclassification.

The multiple ongoing Superior Court private actions, expressly authorized by the Attorney

General, thus dovetail cohesively with the Commonwealth's own direct efforts to reduce misclassification.

Finally, the Commonwealth has a significant state interest in protecting the authority of its judicial system. *See Pennzoil*, 481 U.S. at 14 n. 12 (quoting *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977)) (relying on the state's interest in protecting the authority of its judicial system, "so that its orders and judgments are not rendered nugatory."). Here, the "breadth" of MDA's challenge -- facially invalidating the Attorney General's enforcement authority under Section 148B -- would inject the Court into a fact-intensive inquiry already ongoing in the Commonwealth's judicial system. In addition, the requested relief, if granted, is certain to disrupt those proceedings. *Harrison*, 2009 WL 3272071 at *6 ("interference" includes infringing on state judicial system's right to review and enforce its own judgments). The multiple state interests in play here clearly satisfy *Younger*'s second prong.

### C.    MDA's Members Have an Adequate Opportunity to Press Their FAAAA Preemption Defense in the Massachusetts Courts.

There is also no question that the final *Younger* condition -- that the state-court defendants have an adequate opportunity to raise their defenses there -- has been and will continue to be met here. Here, MDA's presumptive members have already had the opportunity to press their FAAAA preemption defense in Superior Court, and they will have further resort to Massachusetts' appellate system, as well as to "discretionary appellate review by the United States Supreme Court as a last resort." *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252, 263 n.10 (1st Cir. 1993); *see also Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 665 (1st Cir. 2010) ("That the Massachusetts courts provide [an opportunity to fully and fairly litigate constitutional claims] cannot seriously be questioned."); *Johnson v. Board of Bar Overseers of Mass.*, 324 F. Supp. 2d 276, 283 (D.

Mass. 2004) (quoting *Board of Locomotive Eng'rs v. Mass. Comm. Against Discrimination*, 695

F. Supp. 1321, 1323 (D. Mass. 1988)) ("it cannot be doubted that the courts of the

Commonwealth will give federal constitutional issues the closest scrutiny."). As a matter of law,

that opportunity is sufficient to satisfy *Younger*'s third prong.

>    **D.    Any Narrow Exception to *Younger* In Cases Involving "Facially Conclusive Preemption" is Inapplicable Here, Since M.G.L. c. 149, § 148B, is Plainly Not Preempted On its Face by the FAAAA.**

The otherwise clear applicability of *Younger* is not trumped by the fact that a preemption

claim is involved.[13]  *See NOPSI*, 491 U.S. at 365. As explained above, preemption is only an

exception to *Younger* in the very limited circumstances where it is "facially conclusive." And

here it is not "facially conclusive" that the FAAAA preempts Section 148B, because the only

two legal opinions that have addressed the legal substance of this defense reached the exact

opposite conclusion -- that preemption does *not* exist, with the two provisions being interpreted

harmoniously. *See Advanced Delivery Systems*, at *4-7; *Staples, Inc.*, at *1; *see also*

*Woodfeathers*, 180 F.3d at 1022 (no "facially conclusive preemption" where scope of federal

statute was a question of first impression); *GTE Mobilnet of Ohio v. Johnson*. 111 F.3d 469, 478-

80 (6th Cir. 1997) (same where preemption analysis is "complex" and scope of preemption

clause is not clear on its face); *HSBC Bank USA, N.A. v. New York City Comm'n on Human*

*Rights*, 673 F.Supp. 2d 210, 215 (S.D. NY 2009) ("The 'facially conclusive' exception to

---

[13]    Any attempt to escape *Younger* by reliance on cases like *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) and *Rowe*, 552 U.S. at 371-372, is foreclosed by *Colonial Life*. *See* 572 F.3d at 28. Neither *Morales* nor *Rowe* addressed *Younger* considerations, *see, e.g., Morales*, 504 U.S. at 381, n. 1 (specifically noting *Younger* not raised by the state), and both cases can further be distinguished. *Compare Morales*, 504 U.S. at 383 (involving targeted guidelines relating to airline fare advertising) and *Rowe*, 552 U.S. at 371-372 (state law targeting the delivery of tobacco provisions) *with* M.G.L. c. 149, § 148B (broadly applicable misclassification law applying to all employers in Massachusetts). Moreover, because Section 148B does not involve a comparably targeted effort, considerable factual development may well be necessary to determine its impact on MDA's members.

Younger abstention applies only where there exists no unresolved questions of act or law in deciding the preemption question.").  Moreover, the question of FAAAA preemption is necessarily premised on a case-by-case and potentially fact-intensive inquiry as to the particular components of MDA's individual members' business models.[14]  *See NOPSI*, 491 U.S. at 367 ("[W]hat requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination.").  That such an inquiry is required forecloses any argument of facially conclusive preemption.  *See Cedar Rapids*, 280 F.3d at 880 n.2 ("necessity of developing a factual record of the [federal plaintiffs'] business practices and rate structure would appear to foreclose any argument of conclusive preemption.").

## IV.    Conclusion.

For the foregoing reasons, this Court should dismiss MDA's complaint without prejudice on the basis of *Younger* abstention.

---

[14]     Before this Court properly can consider the requested declaratory and injunctive relief, the parties may well have to undertake a substantial period of discovery.  The possible scope of this discovery could be extensive, as the parties likely will need to investigate all of MDA's membership's business models and determine in each case whether there is an impact that company's routes, prices, and services.  This process could well be complex and burdensome, involving the analysis of volumes of information, a number of depositions, and the probable retention of experts.  As such, preemption certainly cannot be established from the face of the Complaint.

By contrast, parallel state cases are already underway that address the same preemption question in the context of each individual state-court defendant's specific business model.  By abstaining, this Court will permit the ongoing proceedings to continue uninterrupted and without duplication, while still ensuring that the state-court defendants are afforded a fully appropriate forum to present their constitutional claims.  *See Coggeshall*, 604 F.3d at 664 (federal court should not "needlessly inject" itself into ongoing state proceedings, particularly where the state-forum affords adequate opportunity to litigate claims).

MARTHA COAKLEY
*ATTORNEY GENERAL OF MASSACHUSETTS*

   /s/ Douglas S. Martland
Douglas S. Martland (BBO # 662248)
Pierce O. Cray (BBO # 104630)
Kate Fitzpatrick (BBO # 664711)
Assistant Attorneys General
One Ashburton Place
Boston, MA  02108
(617) 727-2200 ext. 2062
pierce.cray@state.ma.us
kate.fitzpatrick@state.ma.us
douglas.martland@state.ma.us

October 22, 2010

**Certificate of Service**

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before October 22, 2010.

                                        /s/ Douglas S. Martland