UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS DELIVERY ASSOCIATION,

PLAINTIFF,

v.

MARTHA COAKLEY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS,

DEFENDANT.

CIVIL ACTION NO.:
1:10-cv-11521-RGS

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

The Massachusetts Delivery Association ("MDA") hereby opposes Defendant's Motion to Dismiss on the Basis of *Younger* Abstention. This litigation is not, as Defendant would have it, an attempted "end run" around ongoing Massachusetts Superior Court proceedings. Rather, the Attorney General's motion is an attempted "end run" around this Court's authority to decide important federal questions on the merits. *Younger* requires abstention with respect to state-initiated enforcement proceedings and claims that would interfere with civil judgments. The underlying state proceedings in this case fit neither category. Because federal courts should not relinquish jurisdiction in deference to the states absent extraordinary circumstances, this Court should deny Defendant's motion.

## I. THE DEVELOPMENT OF THE YOUNGER DOCTRINE

### A. Although *Younger* Abstention Has Been Expanded to Reach Certain Civil Proceedings, Its Application Is Significantly Limited

In *Younger v. Harris*, the plaintiff sought to enjoin his state court criminal prosecution under the California Criminal Syndicalism Act, alleging that both the prosecution and the Act were unconstitutional. 401 U.S. 37, 40-41 (1971). Recognizing a policy of equitable restraint

when asked to interfere with state **criminal** proceedings, the Court declined to enjoin the prosecution based on principles of comity. *Id.* at 44. Even so, the Court noted that federalism did not mean "blind deference" to the states, but instead a "sensitivity to the legitimate interests of both State and National Governments . . . in which the National Government . . . endeavors to [protect federal interests] in ways that will not ***unduly interfere*** with the legitimate activities of the States." *Id.* (emphasis added).

Since the *Younger* decision, the Court has extended the doctrine to encompass ***state-initiated*** civil actions, *Huffman v. Pursue, Ltd*., 420 U.S. 592, 597-98 (1975), *Trainor v. Hernandez,* 431 U.S. 434, 444 (1977), and certain state proceedings between private parties which are ***"at the core of the administration of a State's judicial system.***" *Juidice v. Vail,* 430 U.S. 327, 335 (1977). In *Juidice,* for example, the Court held that *Younger* restrained the federal court from deciding whether a state court's contempt order warranted injunctive and declaratory relief. *Id.* at 335-36. Similarly, in *Pennzoil v. Texaco, Inc.*, 481 U.S. 1 (1987), the pinnacle of *Younger*'s reach, the Court concluded that abstention was proper where Texaco sought federal injunctive relief from a bond requirement to appeal a jury verdict. 481 U.S. at 13-14. The Supreme Court vacated the federal district court's injunction in *Pennzoil*, determining that *Younger* applied where there was a fundamental state interest in the process "by which the State compels compliance with the judgments of its courts." *Id.* Significantly, the Court recognized that *Younger* pertains to civil proceedings only if "the State's interests ***are so important*** that exercise of federal judicial power would disregard the comity between the States and the National Government." *Id.* at 21. It also emphasized that it ***did not*** hold that "*Younger* abstention is always appropriate whenever a civil proceeding is pending in state court. Rather . . . we rely on the State's interest in protecting 'the authority of the judicial system, so that its

orders and judgments are not rendered nugatory.'" *Id.* at 14, n.12 (quoting *Juidice*, 430 U.S. at 336, n. 12).

Clarifying if not retreating somewhat from *Pennzoil's* interpretation of *Younger*, the Court subsequently held in *New Orleans Pub. Serv,. Inc., v. Council of New Orleans ("NOPSI")*, that *Younger* reaches "civil proceedings involving certain orders that are ***uniquely in furtherance of the state courts' ability to perform their judicial functions***" only. 491 U.S. 350, 367-68 (1989) (emphasis added). Said differently, the decision in *NOPSI* quelled "[a]ny intimations of a broader scope for *Younger* arising from the fact that the plaintiff in *Pennzoil* was not a public agency." *Id. See also Alleghany Corp. v. Haase*, 896 F.2d 1046, 1052 (7th Cir. 1990) (analogizing Texaco's federal court suit to a convicted state criminal defendant seeking to enjoin a state's appeal procedures).

For its part, the First Circuit has also construed the *Younger* doctrine narrowly, restricting abstention to **state-initiated** enforcement actions and to actions "uniquely in furtherance of the fundamental workings of a state judicial system." *Rio Grande Comty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 (1st Cir. 2005); *see, e.g., Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 777 n.6 (1st Cir. 1990) (noting that *Pennzoil* decision was exception to general rule that *Younger* applies to state-initiated civil or administrative proceedings only); *OHI Asset Lender, LLC v. Woodland Manor Improvement Ass'n*, 687 F. Supp. 2d 12, 28-29 (D.R.I. 2010); *Advanced Cardiology Ctr. Corp. v. Rodriguez*, 675 F. Supp. 2d 245, 249 (D.P.R. 2009). Moreover, the First Circuit also recognized in *Bettencourt* that comity requires federal courts to refrain from granting relief only when doing so would "***interfere substantially***" with ongoing state judicial proceedings. 904 F.2d at 777 (emphasis added). As explained below, the MDA's

request for injunctive relief in this case does not fit within the strict confines the Supreme Court and First Circuit have delineated for *Younger* abstention.

## II. ***YOUNGER*** **ABSTENTION IS NOT WARRANTED**

### A. Federal Court Abstention is the Exception, Not the Rule

As the Ninth Circuit noted in *Green v. City of Tucson*, while questions of the propriety of federal abstention in the interest of judicial efficiency and comity have recurred, "[r]epeatedly, the Supreme Court has informed us that although there are limited circumstances in which such abstention by federal courts is appropriate, those circumstances are 'carefully defined' and 'remain the exception, not the rule.'" 255 F.3d 1086, 1089 (9th Cir. 2001) (quoting *NOPSI*, 491 U.S. at 359). In fact, the Supreme Court has stressed that the "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction except in those extraordinary circumstances 'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). The First Circuit has similarly endorsed the principle that federal courts should be hesitant to abstain. *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009) (noting that the balance of state and federal interests "only rarely favors abstention") (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)); *Fragoso v. Lopez et al.*, 991 F.2d 878, 883 (1st Cir. 1993); *Planned Parenthood League v. Bellotti*, 868 F.2d 459, 464 (1st Cir. 1989).

### B. MDA's Requested Relief Does Not Substantially Interfere with any State Proceeding

#### 1. The *Younger* Test is Triggered Where there is Substantial Interference Only

In her motion to dismiss, Defendant focuses on whether this litigation satisfies the three-pronged *Younger* test without addressing the threshold condition that prospective federal court

relief must ***substantially interfere*** with an ongoing state judicial proceeding. *See Rossi v. Gemma*, 489 F.3d 26, 35 (1st Cir. 2007) (emphasis added); *Green*, 255 F.3d at 1096. This not only places the cart before the horse. It skews the analysis. According to the First Circuit, federal relief does not constitute sufficient interference to require *Younger* abstention unless it amounts to "a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so." *Rio Grande*, 397 F.3d at 70; *Rossi*, 489 F.3d at 35. Indeed, the substantial interference requirement "ordinarily restricts application of the *Younger* doctrine to circumstances in which the state court proceeding is an ***enforcement action against the federal court plaintiff***." *Green*, 255 F.3d at 1094 (emphasis added). That plainly is not the case here. Further, the substantial interference must be "direct"; the mere prospect that a federal court decision may, through claim or issue preclusion, influence or even conflict with the result in state court cannot satisfy the "interference" prerequisite. In *NOPSI*, the Supreme Court clarified the meaning of "interference" for *Younger* purposes as follows:

> It is true, of course, that the federal court's disposition of such a case may well affect, or for practical purposes pre-empt, a future or . . . even a pending . . . state court action. But there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts.

491 U.S. at 373. In this vein, the First Circuit has emphasized that "[n]ormal res judicata effects of federal actions on state actions . . . are not enough to trigger *Younger*. . ." *Rio Grande*, 397 F.3d at 71. *Accord Doran v. Salem Inn, Inc.*, 422 U.S. 922, 927-28 (1975).

**2. The MDA's Request for Prospective Declaratory and Injunctive Relief Does Not Constitute Substantial Interference**

The federal relief sought by the MDA does not rise to the requisite level of "substantial interference" to prompt the three-pronged *Younger* test. Contrary to the Attorney General's characterizations, the MDA does not seek to nullify the Independent Contractor statute. Nor

does it seek to oust the Attorney General's authority to enforce the statute. Rather, the MDA seeks relief that is narrowly-tailored: an injunction against the Attorney General's application of the "B prong" of the Independent Contractor statute, and only as it relates to a single industry: same-day delivery and courier companies engaged in interstate commerce. In contrast to *Younger*, where the plaintiff challenged the constitutionality of the state statute and sought to enjoin ***all enforcement*** of it, the MDA seeks to enjoin the Attorney General's enforcement of one component of the statute against motor carriers only. *Guillemard-Ginorio*, 585 F.3d at 519 n. 15.

Such relief, despite the Attorney General's contentions, would not undermine the state's enforcement power in the area of independent contractor misclassification. The Attorney General can still enforce the statute in its entirety against every business except motor carriers, and it can continue to enforce the statute's A and C prongs against motor carriers, as well. Consequently, little would change in the state's wage and hour remedial scheme. S*ee Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 858 (N.D. Ill. 2000) (abstention improper where "plaintiffs are merely challenging the constitutionality of a single statute regulating a narrow class of contractual relationships.").

What is more, before the Court can even reach the *Younger* abstention test, the relief sought must actually or effectively enjoin ongoing state proceeding. *Rio Grande*, 397 F.3d at 70. Here, as discussed *infra*, the MDA is not involved in any state proceeding. Assuming *arguendo* that the private lawsuits filed against its members could be imputed to the MDA, which they cannot, MDA's requested relief still would not disrupt these proceedings to the extent required to show substantial interference. To be clear, the MDA seeks ***prospective*** declaratory and

injunctive relief only, not to terminate any pending proceeding or void a judgment. *Wooley v. Maynard*, 430 U.S. 705, 711 (1977).

Regarding the Attorney General's "authorization" of private suits, the ministerial act of issuing a right-to-sue letter does not transform private wage-related litigation into the type of proceeding *Younger* contemplates: either a state-initiated proceeding or one "uniquely in furtherance" of the state's judicial processes. Even if it did, the MDA seeks only to enjoin the enforcement of ***one of the three*** prongs of the Independent Contractor statute. Because the statute mandates a conjunctive test, private litigants can and will proceed with their litigation based on either the A or C prong, or both. Although a positive outcome in this case for the MDA may tangentially influence ongoing litigation, influence alone is insufficient to trigger *Younger* abstention. An actual or effective injunction is required and, here, no such disruption would occur. "*Younger* principles are not invoked by the mere fact that federal relief has an impact upon state governmental machinery . . ." *Morial v. Judiciary Com. of Louisiana*, 565 F.2d 295, 299 (1977). Quite simply, the MDA's requested relief will not substantially interfere with any ongoing state proceeding and, therefore, the Court need not even reach the *Younger* analysis.

### C. Even if the Court Reaches the Three-Pronged *Younger* Test, this Litigation Does Not Satisfy It.

If the Court were to determine that the exceedingly narrow relief sought in this matter somehow rises to the necessary level of substantial interference, Defendant cannot establish each element of the three-pronged test. First, there is no ongoing state-initiated enforcement action, never mind one against the MDA. Second, the preemptive effect of the FAAAA substantially diminishes the state's interest in the ongoing state proceedings. Finally, the MDA does not have an adequate opportunity to raise federal statutory preemption and constitutional challenges in the state court proceedings. It is not a party to those suits, it cannot obtain the requested relief

through those proceedings, and its interests do not align directly or completely with those of its members.

1. **The Attorney General has Failed to Satisfy the First Prong of the *Younger* Test Because the MDA Is Not a Party to Any Ongoing State-Initiated Enforcement Proceeding.**

a. **Private litigation against MDA members does not constitute an ongoing state proceeding**.

Although the Defendant enumerates a list of pending independent contractor misclassification suits in state court, notably, the MDA is not a party to them. Nor has the Attorney General instituted an enforcement action against any MDA member. The "authorization" referenced in her motion to dismiss does not, in fact, initiate a lawsuit. Instead, it amounts to a procedural hurdle that a plaintiff alleging a wage violation must clear before filing a complaint. Once the Attorney General issues a right to sue letter **or** 90 days elapse, the complainant is free to pursue the claim without the state's oversight. As such, the Attorney General's "authorization" could merely amount to inaction. What is more, the Defendant's right to sue letter explicitly states that the office takes no position on the claim's merits and that it will take no further enforcement action. Attached as Exhibit A is the Affidavit of Vanessa K. Hackett, appending a right to sue letter. This conduct is far from a state-initiated action in which the state assumes an active role in its prosecution. Moreover, when the private parties settle, as has recently occurred in one of the state court proceedings, it does not bar the Attorney General from further investigation or commencing an enforcement action against the company.

In *Kendall-Jackson Winery,* liquor distributors sought relief through the Illinois Liquor Control Commission against suppliers for violations of the Wine and Spirits Industry Fair Dealing Act. The suppliers, in turn, filed a complaint in federal court against the commissioners, asserting that the Fair Dealing Act violated the Contracts Clause and dormant Commerce Clause.

Rejecting the commissioner's contention that it must abstain under *Younger* because the Commission proceedings amount to administrative enforcement actions, the court held that while the Commission is empowered to penalize a supplier for violations of the law, "here, private parties are pursuing relief through the Commission, and the primary remedy sought by the distributors—an order that the suppliers violated the Fair Dealing Act—is similar to a remedy that a private party could obtain in a civil action." 82 F. Supp. 2d at 856. The court further noted that the Commission issued preliminary orders only at the request of private parties and that the Commission did not initiate any investigation or hearing, "which suggests that the state has no more interest in the resolution of this dispute than it does in any private civil action taking place in the context of a regulated industry." *Id.* at 857.

Similarly, while the Attorney General has an interest in enforcing the Independent Contractor statute, the underlying state actions in this case were privately-initiated. What is more, the Attorney General elected **not** to pursue the complaints, and the remedies sought by plaintiffs—primarily compensatory damages and attorneys' fees—inure directly and exclusively to the benefit of the private parties and their counsel, not to the state.

Where there is no pending state-initiated proceeding, federalism concerns dissipate. *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). Additionally,

> [W]hile a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

*Id.* This is the precise dilemma confronting the MDA. As there is no ongoing state-initiated action against the MDA, or even a private action against the vast majority of its membership, this Court should not leave the rights of the MDA's members in limbo.

      a. **The MDA is not a party to any ongoing state proceeding, nor is it the "alter ego" of the state court defendants**.

***Conceding*** that the MDA is **not** a party to any ongoing state proceeding—never mind a state-initiated enforcement action—Defendant claims that the MDA is merely an "alter ego" of its membership and, therefore, this Court must impute ongoing state proceedings against its members to the MDA. Not so fast. First, unlike the cases Defendant cites, which involve agency relationships between the federal court plaintiffs and the state court defendants, the MDA has no agency relationship with its members. *Doran*, 422 U.S. at 928-29. Moreover, as in *Doran*, the MDA and its members are "unrelated in terms of ownership, control, and management." *Id.* Finally, the MDA is a trade association established to advocate for business-related interests. And while *Younger* may be applied to bar a corporation from asserting a derivative right on behalf of its employees, it should not "extend[] to cases where an institutional plaintiff exists primarily for the expression and defense of the right sought to be protected." *Gajon Bar & Grill, Inc. v. Kelly*, 508 F.2d 1317, 1323 (2d Cir. 1974) (Chief Judge Kauffman, concurring).

In *Citizens for a Better Env't v. Nassau County*, CBE, an advocacy organization, instituted a federal lawsuit seeking declaratory and injunctive relief. It sought to quash police-issued citations to some of its employees who went door-to-door distributing literature. 488 F.2d 1353, 1357-59 (2d. Cir. 1973). The Fifth Circuit concluded that while the individually-cited plaintiffs could not enjoin the state criminal proceedings against them, *Younger* did not bar CBE's request for federal injunctive relief against future police conduct because it was not a state court defendant. *Id.* at 1360-1361. *See also Robinson v. Stovall*, 646 F.2d 1087, 1091-92 (5th Cir. 1981) (declining to abstain under *Younger*, concluding that arrested and non-arrested plaintiffs do not "fall into same hopper" because they are all United League members or because

they engaged in collective action to press their political and social grievances). The "alter ego" argument is no more legitimate when the institutional plaintiff promotes the business, rather than political, interests of its members. *See Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857, 867 (N.D. Ill. 2007) (declining to abstain in federal court suit involving company's challenge to Prevailing Wage Act where trade association's state court suit sought similar relief, noting "the fact remains that at least some Plaintiffs, strictly speaking, are not parties to the same . . . proceedings.").

b. **The First Circuit has held that an investigation does not amount to an "ongoing state proceeding" for *Younger* purposes**.

Although the Attorney General asserts that she is currently investigating certain MDA members, this does not rescue the first prong of the *Younger* test. The First Circuit has explicitly stated that an investigation is not an "ongoing state proceeding" for purposes of *Younger* abstention. *Guillemard-Grigorio*, 585 F.3d at 519; *see also Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989) ("[w]here no formal enforcement action has been undertaken, any disruption of state process will be slight"). So too here, where the Attorney General has yet to take formal enforcement action against any MDA member aside from the rubber-stamping of right-to-sue letters. *Wulp v. Corcoran*, 454 F.2d 826, 832 (1st Cir. 1972).

Extending *Younger's* reach to mere investigations effectively leaves the members' rights in the balance while the agency "contemplates enforcement but does not undertake it." *Telco*, 885 F.2d at 1229. Consequently, federalism principles do not require abstention on the basis of Defendant's investigation of MDA members.

2. **The State's Interests Pale When They are Weighed Against the Fundamental Federal Interests At Stake**

Although eradicating the misclassification of independent contractors implicates an important state interest, the B prong does nothing to accomplish that goal. In fact, the B prong is

blind to whether an independent contractor in this industry is misclassified; it bans all of them. Said differently, the only motor carrier contractors outlawed by the B prong—that are not **already** appropriately prohibited under the A and C prongs—are the legitimate ones! In this light, the Attorney General's interest in this case is actually quite limited.

Moreover, the federal government's preemption of this field through the FAAAA, and its "overwhelming federal interest" in the dormant Commerce Clause, markedly diminishes whatever interest the state might arguably have in this matter. *Harper v. PSC*, 396 F.3d 348, 356 (4th Cir. 2005); *Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 537-39 (7th Cir. 2001) (concluding that there is no state interest where federal law preempts the field). In such circumstances, courts will utilize a balancing test to determine whether the federal interest outweighs that of the state. *Ford Motor Co. v. Insurance Comm'r of Pennsylvania*, 874 F.2d 926, 934 (3rd Cir. 1989). In *Ford*, the Third Circuit examined the state's interest in regulating the insurance industry against the "significant federal interest in insuring the unhindered enforcement of federal law." It held that "the scales weigh decidedly in favor of federal intervention," so that the federal court could assess the extent of preemption. *Id*. "[W]here the core of the controversy [involves] federal . . . claims, and the state proceedings are initiated for *enforcement* rather than *interpretation* of the state statute, we do not conclude that the exercise of federal jurisdiction is intrusive." *Id.* at 935. In fact, where an overwhelming federal interest exists, ***it is the state*** that intrudes into an area of federal regulation. *Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm'rs*, 44 F.3d 1178, 1183-84 (3rd Cir. 1995).

Indeed, where state regulation implicates the dormant Commerce Clause, the countervailing state interest may not be sufficiently important to satisfy the second part of the *Younger* test. In *Harper*, the court held that because the state's interest "serve[d] to impede

interstate commerce, we must evaluate the effect of the dormant Commerce Clause upon the decision to abstain." 396 F.3d at 355. It noted that, "[r]ecognizing that there is a peculiarly national interest—and therefore, more limited state interest—in no way threatens the kind of comity that has always underpinned the *Younger* doctrine." The court went on to find that, "[w]hen there is an overwhelming federal interest—an interest that is as much a core attribute of the national government as the list of important state interests are attributes of state sovereignty in our constitutional tradition—no state interest, for abstention purposes, can be nearly as strong at the same time." *Id.* at 356. *See also Lil' Brown Smoke Shack v. Wasden*, 2009 U.S. Dist. LEXIS 58679 (D. Id. July 7, 2009) (holding state's interest not sufficiently important to warrant abstention, as it was a federal question in an area where federal law predominates). *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 301 (4th Cir. 2007).

Similarly, cases involving preemption challenges under the Supremacy Clause are often "inappropriate vehicles for abstention" because their presence requires the federal courts to "balance the state interest served by abstention against the federal interest asserted to have usurped state law." *Zahl v. Harper,* 282 F.3d 204, 210 (3rd Cir. 2002). The "notion of comity embodied by the *Younger* doctrine is not strained when a federal court cuts off state proceedings that entrench on the federal domain." *Ford Motor Co.*, 874 F.2d at 934 (3d Cir. 1989) (quoting *Middle South Energy Inc. v. Arkansas Public Service Com.*, 772 F.2d 404, 417 (8th Cir. 1985)); *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Com.*, 791 F.2d 1111, 1117 (3rd Cir. 1986).

In this case, the MDA does not ask this Court to halt all regulation of the use of independent contractors, but merely to enjoin the enforcement of the statute's B prong against same-day delivery and courier providers engaged in interstate commerce. Because the B prong

creates a complete ban against the use of independent contractors in a context where they have been explicitly permitted by federal law, such an injunction would only mean that these companies could lawfully use independent contractor delivery drivers, subject to their compliance with the A and C prongs.

### 3. The MDA Has No Adequate Opportunity to Raise Federal Constitutional Challenges in the State Proceedings.

Finally, the current litigation cannot meet the third prong of *Younger* because abstention would deprive the MDA of a full and fair opportunity to raise its federal preemption and constitutional challenges. As an initial matter, the relief the MDA seeks—**prospective declaratory and injunctive relief** against the Attorney General's enforcement of the B prong—is unavailable in a civil suit between private litigants. Additionally, the costs and risks associated with defending these cases, many of which are class actions, are prohibitive. The relevant statutes mandate treble damages and attorneys' fees to a prevailing plaintiff. Such expenses (as well as the time necessary to defend these cases) may force an individual MDA member, many of which are small, family-owned businesses, to settle or to abandon the appeals process, rather than to pursue the FAAAA preemption defense. Because the individual member's interests therefore do not directly correlate with those of the MDA, which has the resources and capacity to litigate this case to conclusion, the MDA and its other members may be robbed of a final decision on the merits. Moreover, even if an individual member pursues the FAAAA defense, a fact-finder may not reach its merits, concluding that the particular member cannot meet either the A or C prong of the conjunctive Independent Contractor test.

In this light, a representative action is the only real vehicle to establish the unlawfulness of the B prong. While Defendant may argue that a single MDA member, not party to a pending state proceeding, could initiate a comparable action without triggering *Younger*, the practical

affect of such litigation—the prohibitive cost and the risk of exposure to government enforcement or expensive privately-initiated class actions—make it highly improbable, if not outright impossible, for one to do so. In effect, abstention here would leave the federal statutory and constitutional rights of the MDA and its members in limbo: waiting either to achieve appellate-level resolution of the FAAAA defense in an unrelated state court proceeding, which likely will never occur, or to be the next defendant facing an Independent Contractor class action law suit.

### D. Even if the *Younger* doctrine Would Otherwise Apply, Extraordinary Circumstances Exempt the Court from Abstention

#### 1. It Is "Readily Apparent" that the FAAAA Preempts the B Prong of the Independent Contractor Statute.

Although the Supreme Court held in *NOPSI* that a "substantial" claim of federal preemption is insufficient to exempt a case from abstention if the *Younger* factors are otherwise satisfied, exemption is warranted here where FAAAA preemption of the B prong is readily apparent. *Chaulk Servs. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361 (1st Cir. 1995) (holding it was readily apparent that the National Labor Relations Act preempted the conduct alleged); *Schall v. Joyce*, 885 F.2d 101, 106 (3rd Cir. 1989); *Shank v. E. Hempfield Twp.*, 2010 U.S. Dist. LEXIS 72589, *12 (E.D. Pa. 2010) (even where the *Younger* test is satisfied, abstention is improper where "extraordinary circumstances exist . . . such that deference to the state proceeding will present significant and immediate potential for irreparable harm to the federal interests asserted") (quoting *Zahl*, 282 F.3d at 209). To that end, the First Circuit has refused to apply abstention doctrines "when the operation of federal preemption is clear." *Ins. Comm'r of P.R. v. Doral Ins. Agency, Inc.*, 2006 U.S. Dist. LEXIS 80333, *20 (D.P.R. 2006).

In fact, Congress's intent to preempt the states' power to regulate motor carriers through the FAAAA is clear. It enacted the FAAAA to ensure that transportation rates, routes, and

services reflect "maximum reliance on competitive market forces" to stimulate "efficiency, innovation, and low prices" as well as variety and quality. Further, to prevent states from impermissibly restricting motor carriers engaged in interstate commerce, Congress employed broad preemption language in the FAAAA, which prohibits states from "enacting or enforcing a law, regulation, or other provision . . . related to a price, route, or service" of any motor carrier. Compl. ¶ 1.

Thus, whether or not the Independent Contractor statute is a law of general applicability, the "B prong" on its face prohibits motor carriers from using independent contractor delivery drivers. The U.S. Department of Transportation ("DOT"), the agency tasked with regulating the industry and enforcing the FAAAA, unequivocally declared that legislation that bans motor carriers from using independent contractors was preempted: "[Los Angeles'] attempt to shape the labor forces of motor carriers is the type of state economic regulation that Congress sought to preempt with the FAAAA." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), *Amicus Brief filed that the United States*. (internal citations omitted). The DOT's position is supported by the legislative history of the FAAAA.

Courts that have considered bans on the use of independent contractors have arrived at the same conclusion. In *City of Los Angeles*, the American Trucking Association, on behalf of its members, appealed the denial of its request for injunctive relief to prohibit the city from requiring drayage drivers to sign concession agreements that required drivers to transition from the use of independent contractors to employees, arguing that the FAAAA preempted such provisions. The Ninth Circuit agreed with the DOT that, "the independent contractor phase-out provision is one highly likely to be shown to be preempted" by the FAAAA. *City of Los Angeles*, 559 F.3d at 1056. Indeed, on remand, the district court enjoined enforcement of the

independent contractor provision on FAAAA preemption grounds. Other state courts considering independent contractor prohibitions have similarly found FAAAA preemption. *See In Re Federal Preemption of Provisions of Motor Carrier Act,* 566 N.W.2d 299, 310 (Mich. App. 1997) (the FAAAA preempted a Michigan regulation requiring motor vehicles to be operated by employees, not independent contractors); s*ee also California v. Pac Anchor Transportation, Inc.*, Los Angeles Superior Court Case No. BC 397600 Court Order (attached hereto as Exhibit B).

Moreover, a district court in the First Circuit has held that abstention is improper due to FAAAA preemption of state regulation that has an effect on prices, routes, or services. In *UPS v. Flores-Galarza*, the court concluded that the FAAAA preempted a Puerto Rican law prohibiting air cargo carriers from making deliveries in Puerto Rico until it paid certain excise fees. It held that "the requirements of the [regulatory] scheme, including the requirements that carriers obtain the information required and compile and submit the manifests, relate to carriers' services, routes, and prices and are preempted." 275 F. Supp. 2d 155, 158 (D.P.R. 2003). Further, the court held that the abstention doctrine did not apply because federal preemption was clear "as established by this Court's and the Court of Appeals' holding that the statutory scheme . . . is preempted." *Id.* at 159.

In the same way, the FAAAA clearly preempts the B prong of the Independent Contractor statute. More than manifest submissions or excise taxes, enforcement of the B prong against same-day delivery and courier providers effects a complete ban against their use of independent contractors, a fundamentally less expensive business model. In *Travers v. JetBlue Airways Corp.*, Judge O'Toole examined identical language in the Airline Deregulation Act ("ADA") in the context of the Massachusetts Tips Law, and held that the ADA preempted its

application against Jet Blue. Because the plaintiffs' claims sought to compel the airline to change its practices with respect to the imposition and collection of curbside check-in fees, Judge O'Toole found that the statute's application would have more than a "tenuous, remote, or peripheral" affect on "prices, routes, or services." 2009 U.S. Dist. LEXIS 63699, *7-8 (D. Mass. July 23, 2009). *See also Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244, 251 (D. Mass. 2009) (holding ADA preempted Tips Law because proposed changes to avoid its violation would have an effect on service). Here, as delineated in the Complaint, a ban on the industry's use of independent contractors would obviously have a greater effect on "prices, routes, or services" than a modification of the manner in which airlines collect curbside baggage fees.

In contrast to Defendant's arguments, extensive factual discovery as to each MDA member is not necessary to determine whether FAAAA preemption is required. The independent contractor model plainly is less expensive, as the company does not need to provide benefits, vacation, sick leave, or absorb the costs of purchasing and maintaining a fleet of vehicles. Using independent contractors, a company can also avoid having to maintain a full staff during slower periods to anticipate periods of heightened demand. Further, the MDA does not ask this Court to review any individual member's use of independent contractors or the costs of conversion, just the right to use independent contractors period. In this light, the FAAAA's preemption of the B prong of the Independent Contractor statute is clear and therefore excepts this matter from *Younger* abstention. *Bagget v. Department of Professional Regulation, Bd. Of Pilot Comm'rs.*, 717 F.2d 521, 524 (11th Cir. 1983) ("When preemption is readily apparent . . . and . . . the state tribunal is acting beyond the lawful limits of its authority, abstention can serve no principle of comity or of 'our federalism'").

2. **The Treble Damages, Mandatory Attorneys' Fees, and Prevalence of the Class Action Vehicle in these Cases Amount to an "Extraordinary Circumstance."**

Finally, although "the cost, anxiety, and inconvenience of having to defend against a **single** prosecution is not [considered] a 'great and immediate harm'" to merit an exception from *Younger* abstention, much more than the typical expense and nuisance of a single prosecution is at stake here. *J. & W. Seligman & Co. v. Spitzer*, 2007 U.S. Dist. LEXIS 71881 *1, *22-23 (S.D.N.Y. 2007) (quoting *Huffman*, 420 U.S. at 601-02). The Independent Contractor statute imposes mandatory treble damages and attorneys' fees. What is more, because the independent contractors perform services in the ordinary course of the company's business, the industry is vulnerable to class actions. These two factors make these cases highly attractive to plaintiff's attorneys, who aggressively pursue them.

When a plaintiff-side attorney launches an independent contractor misclassification class action against a same-day delivery service or courier company, he effectively delivers the company a death sentence. Many of these companies are small, family-owned operations that simply cannot survive the costs of defending this litigation through the appeal process. Instead, they will be forced to abdicate important federal statutory and constitutional rights, pay out massive settlement amounts and fundamentally alter their business in a manner that is at odds with the policy of the United States government. Of course, if they do not change their business model to hire contractors as W2 employees, settlement in these private actions will provide no insulation against future misclassification claims or Attorney General enforcement actions. As such, absent this Court's ruling that the B prong of the Independent Contractor statute is preempted by the FAAAA, the MDA members will remain trapped between the Scylla of the prospect of government enforcement action or worse—privately-initiated class actions—and the Charbydis of risking exposure while the status of their right to use independent contractors under

the FAAAA remains unsettled. These considerations constitute an extraordinary circumstance that merits federal court intervention.

## III. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss on *Younger* abstention grounds and permit this matter to proceed on the merits.

Respectfully submitted,

MASSACHUSETTS DELIVERY ASSOCIATION

By its attorneys,

/s/ David C. Casey

David C. Casey (BBO No. 077260)
Walter C. Hunter (RI Bar No. 2775)
Carie A. Torrence (BBO No. 675237)
Vanessa K. Hackett (BBO No. 673493)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA 02110
Tel: 617.378.6000
Fax: 617.737.0052
dcasey@littler.com
whunter@littler.com
ctorrence@littler.com
vhackett@littler.com

Dated: December 3, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2010, I caused a copy of this document to be served by electronic filing on all counsel of record.

/s/ David C. Casey
David C. Casey

Firmwide:98538561.1 066436.1001