UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS DELIVERY ASSOCIATION, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 10-11521-DJC<br>) |
| MARTHA COAKLEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

**CASPER, J.**  April 8, 2011

**I. Introduction**

Plaintiff Massachusetts Delivery Association ("MDA"), a trade organization whose member companies provide same-day delivery services, brought this action for declaratory and injunctive relief against Defendant Martha Coakley in her official capacity as Attorney General of the Commonwealth of Massachusetts ("the Attorney General"). Currently, some of MDA's member companies are defending against a flurry of lawsuits in both state and federal courts brought by courier drivers, as well as against enforcement investigations brought by the Attorney General, which accuse the companies of violating the Massachusetts Independent Contractor statute, M.G.L. c. 149, § 148B, by classifying courier drivers as independent contractors rather than employees.

MDA now seeks a declaratory judgment that one aspect of that statute - the subsection requiring that "an individual performing any service" for an employer "shall be considered to be an

1

employee [unless] the service is performed outside the usual course of the business of the employer," M.G.L. c. 149, § 148B(a)(2), commonly known as "the B prong" of the statute - cannot be enforced against same-day delivery service companies because it is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501 *et seq.*, which states that "no State . . . shall enact or enforce any law, rule, regulation, standard or other provision having the force or effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1). This argument mirrors the preemption claims raised by MDA's member companies in the pending state and federal actions. MDA also seeks injunctive relief prohibiting the Attorney General from enforcing the B prong against same-day delivery service companies.

As the parties acknowledge, this Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2201. Before the Court is the Attorney General's motion to dismiss on the ground that, pursuant to Younger v. Harris, 401 U.S. 37 (1971) and its progeny, this court must abstain from exercising its jurisdiction and allow the pending state court actions to run their course. For the reasons discussed below, the Attorney General's motion to dismiss is GRANTED.[1]

---

[1] Also before the Court is a Motion to Intervene filed by Francis Arrigo, John Garand, Ezequiel Antonio Garcia, Alberg Oliveira and Stephen Reynolds, plaintiffs in pending state and federal court proceedings. In light of this Court's ruling on Younger abstention, that motion is DENIED AS MOOT.

## II. Factual Background[2]

### A. The Massachusetts Independent Contractor statute

The Massachusetts Independent Contractor statute governs whether workers in Massachusetts are classified as employees or as independent contractors. M.G.L. c. 149, § 148B. Each classification carries different legal rights and obligations regarding minimum wage levels, overtime, health insurance and other benefits, employer record-keeping, protections against discharge and withholding from taxation. M.G.L. c. 149, § 148B(d). A worker performing any service for an employer may only be classified as an independent contractor if three conditions are met: first, "the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact," M.G.L. c. 149, § 148B(a)(1) (known as "the A prong"); second, "the service is performed outside the usual course of the business of the employer," M.G.L. c. 149, § 148B(a)(2) ("the B prong"); and third, "the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." M.G.L. c. 149, § 148B(a)(3) ("the C prong"). If any of these three prongs are not satisfied, the employer must classify the worker

---

[2]Courts in this Circuit are divided about whether a motion to dismiss pursuant to Younger abstention is the equivalent of a motion under Fed. R. Civ. P. 12(b)(1), see Montgomery v. Montgomery, 2011 WL 462740 at *1 n.1 (D.N.H. Feb. 9, 2011), or under Fed. R. Civ. P. 12(b)(6), see Mallinckrodt LLC v. Littell, 616 F. Supp. 2d 128, 131 n.2 (D. Me. 2009), or both, Nollet v. Justices of the Trial Ct. of the Commonwealth of Mass., 83 F. Supp. 2d 204, 206 (D. Mass. 2000), or neither, see Christian Action Network v. Maine, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010). Here, however, "the parties do not dispute the existence and content of the pertinent documents (although they do dispute their significance), and therefore the question is academic." Christian Action Network, 679 F. Supp. 2d at 143 n.2. The facts recounted in this section are derived from MDA's complaint, official public records, documents central to MDA's claim, documents sufficiently referred to in the complaint and documents docketed in this case the authenticity of which is not disputed by the parties and are construed in MDA's favor.

as an employee; failure to do so exposes both the employer and the employer's president and treasurer to both civil and criminal penalties, including fines of up to $50,000 and imprisonment of up to two years per infraction. M.G.L. c. 149, §§ 27C(a)(1), 148B(d).

## B. Parties

The Attorney General, the Defendant in this action, is charged with enforcing the Massachusetts Independent Contractor statute. M.G.L. c. 149, § 2. The Attorney General may issue civil citations of up to $25,000 for each violation, may bring direct civil or criminal proceedings in state court against violators or may permit employees alleging misclassification to bring their own civil court proceedings to enforce the statute. M.G.L. c. 149, §§ 27C, 150. In the past year, the Attorney General brought over 60 direct actions and permitted nearly 2,000 private rights of action enforcing the statute. In the past few years, the Attorney General has received numerous requests for private rights of action alleging misclassification by delivery companies and has approved such requests against eleven such companies.

Plaintiff MDA is a non-profit trade organization comprised of approximately 40 same-day delivery companies that either engage independent contractor delivery drivers directly or subcontract through entities that engage independent contractor delivery drivers. As noted in the record, in 2010, the MDA website stated that "[i]n association with the M[essenger] C[ourier] A[ssociation of] A[merica], your industry peers have established this State Association to protect the I[ndependent] C[ontractor] model in our state." MDA's member companies rely on independent contractor delivery drivers to perform the companies' core business: picking up and delivering products throughout the state and across state lines. MDA acknowledges in its complaint that this conduct "arguably violate[s]" the B prong, and that "no MDA member can satisfy the B prong with

4

respect to independent contract drivers because the MDA's members are all in the delivery service industry." Am. Compl. at ¶¶ 8, 21. MDA thus asserts that its members are "in peril of an enforcement action and civil actions by private parties." Id. at ¶ 8.

Although MDA has not disclosed a list of its member companies (or at least has not done so on the record in this case), counsel for MDA has acknowledged in a filing to this Court that at least three MDA member companies - including one headed by MDA's Vice-President - are defendants in private civil actions pending in state court alleging violations of the Massachusetts Independent Contractor statute. See Reynolds v. City Express, Inc.,[3] SUCV 2010-02655 (Suffolk County Super. Ct., filed July 1, 2010); Okeke v. Dynamex Operations E., Inc., MICV 2010-02017 (Middlesex County Super. Ct., filed May 26, 2010); Reynolds v. World Courier Ground, Inc., NOCV 2010-00914 (Norfolk County Super. Ct., filed May 14, 2010; removed sub. nom. Reynolds v. World Courier Ground, Inc., 1:10-cv-11060-JLT (D. Mass.) June 22, 2010; remanded Feb. 14, 2011).

Additionally, a number of private civil actions are pending in both state and federal courts in Massachusetts alleging that a number of same-say service delivery companies, which may or may not be MDA members, misclassified their employees as independent contractors. See Oliveira v. Advanced Delivery Sys., Inc., MICV 2009-01311 (Middlesex County Super. Ct., filed Apr. 3, 2009) (plaintiff's motion for partial summary judgment granted July 20, 2010); Arrigo v. Contractor Mgmt. LLC, 1:10-cv-11650-MLW (Middlesex County Super. Ct., filed Aug. 9, 2010; removed to this Court, Sept. 28, 2010; motion to remand pending); Versolato v. Office Depot, Inc., 1:10-cv-10379-RWZ (Essex County Super. Ct., filed Jan. 19, 2010; removed to this Court, March 3, 2010); Garcia

---

[3] Aaron Driben, the Vice-President of MDA, also serves as City Express, Inc.'s President, Treasurer, Secretary and Director.

v. Advanced Delivery Sys., Inc., 1:10-cv-11731-GAO (Middlesex County Super. Ct., filed Sept. 19, 2010; removed to this Court, Oct. 12, 2010).

**C. The Ongoing State Proceedings**

1. Reynolds v. City Express, Inc.

Plaintiffs Stephen Reynolds and Dickran Yeretzian filed a complaint in Suffolk County Superior Court on July 1, 2010, on behalf of themselves and a putative class of similarly situated courier drivers, against defendants including City Express, Inc. City Express is a member of MDA. The complaint alleged misclassification under the Massachusetts Independent Contractor statute, multiple violations of state wage laws, unjust enrichment and sought quantum meruit. On September 30, 2010, City Express filed its answer, which included an affirmative defense stating that "[p]laintiffs' claims . . . are preempted in whole or in part by federal law . . . including but not limited to, the [FAAAA] of 1994." The case is ongoing.

2. Okeke v. Dynamex Operations East, Inc.

Plaintiffs Michael Okeke and Willy Carl Paquiot filed a complaint in Middlesex County Superior Court on May 26, 2010 (superseded on March 9, 2011 by an amended complaint), on behalf of themselves and a putative class of similarly situated individuals, against Dynamex Operations East. Dynamex is a member of MDA. The complaint alleged various violations of state employment laws, including misclassification under the Massachusetts Independent Contractor statute. On August 31, 2010, Dynamex filed its answer, which included an affirmative defense stating that "[p]laintiffs' claims . . . are preempted in whole or in part by federal law . . . including but not limited to, the [FAAAA] of 1994." The case is ongoing.

3. Reynolds v. World Courier Ground, Inc.

Plaintiff Stephen Reynolds filed a complaint in Norfolk County Superior Court on May 14, 2010 on behalf of a putative class of current and former delivery drivers of World Courier Ground. World Courier Ground is a member of MDA. The complaint alleged misclassification under the Massachusetts Independent Contractor statute, multiple violations of state wage laws, unjust enrichment and sought quantum meruit. World Courier Ground removed the case to federal court on June 22, 2010. World Courier Ground filed its answer in federal court on June 29, 2010, omitting any affirmative defense based on FAAAA preemption but reserving the right to add affirmative defenses as warranted by additional investigation and discovery. On February 14, 2011, this Court, Judge Tauro presiding, held that the amount in controversy was insufficient to establish federal jurisdiction and remanded the case back to state court. Reynolds v. World Courier Ground, Inc., 2011 WL 503687 (D. Mass. Feb. 14, 2011). The case is ongoing.

4. Oliveira v. Advanced Delivery Systems, Inc.

Plaintiff Alberg Oliveira filed a complaint in Middlesex County Superior Court on April 3, 2009 against Advanced Delivery Systems ("ADS"). The complaint alleged misclassification under the Massachusetts Independent Contractor statute, multiple violations of state wage laws, conversion and unjust enrichment. In opposition to Oliveira's later motion for partial summary judgment on the issue of whether Oliveira was an independent contractor or an employee, ADS asserted that the FAAAA preempted the Massachusetts Independent Contractor statute as applied to ADS' classification of its workers. On July 16, 2010, the Superior Court found no preemption, concluded that Oliveira was an ADS employee rather than an independent contractor, and granted Oliveira's motion. Oliveira v. Advanced Delivery Sys., Inc., 2010 WL 4071360, at *2-*4, *8 (Middlesex

7

County Super. Ct., July 16, 2010).[4] The remainder of the case - adjudicating whether Oliveira was underpaid and resolving his conversion and unjust enrichment claims - is ongoing.

The question of whether the Massachusetts Independent Contractor statute is preempted by the FAAAA is also central to many of the other cases mentioned in part II.B above.[5]

Against this backdrop, MDA brought the instant action seeking a declaratory judgment that as a matter of federal law the defense asserted in state proceedings described above - namely, that the FAAAA does preempt the Massachusetts Independent Contractor statute - is correct, at least as to prong B. MDA also seeks injunctive relief barring the Attorney General from enforcing prong B.

**III. Discussion**

The Attorney General now moves to dismiss the instant action on the grounds of Younger abstention. Abstention is a judge-made doctrine under which federal courts may abstain from exercising their jurisdiction over a given case "out of respect for the independence of state governments and to encourage 'the smooth working of the federal judiciary.'" Getty Petroleum

---

[4] Oliveira is one of the pending state actions identified in the Attorney General's motion to dismiss in this case. In MDA's filing to this Court identifying ongoing state litigation involving MDA members, ADS is not listed as an MDA member.

[5] See, e.g., Arrigo v. Contractor Mgmt., Inc., 1:10-cv-11650-MLW (D. Mass.), Docket #2 at 7 (asserting FAAAA preemption as an affirmative defense); Garcia v. Advanced Delivery Sys., Inc., 1:10-cv-11731-GAO, Docket #5 at 4 (same); Versolato v. Office Depot, Inc., 1:10-cv-10379-RWZ, Docket #19 at 9, #20 at 8 (asserting as an affirmative defense preemption "by Federal Law, including, without limitation, by the federal regulation of interstate commerce in general and the transportation industry in particular"). FAAAA preemption was also central in an additional case, Derochers v. Staples, Inc., MICV 2009-04845 (Middlesex County Super. Ct., filed Dec. 14, 2009), which was pending when the instant case began but subsequently settled. Prior to settlement, Staples moved to dismiss on the ground of FAAAA preemption; the Superior Court found no preemption and entered an order denying the motion. Id. at 2-5.

Corp. v. Harshbarger, 807 F. Supp. 855, 856-57 (D. Mass. 1992) (quoting R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 501 (1941)). The Younger abstention instructs federal courts not to interfere with ongoing state court litigation or, in some cases, with state administrative proceedings, unless there are extraordinary circumstances. Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007) (citing Maymó-Meléndez v. Alvarez-Ramírez, 364 F. 3d 27, 31 (1st Cir. 2004)). Younger abstention is "is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding [involving the federal plaintiff]; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi, 489 F.3d at 34-35 (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). Before turning to these three so-called "Middlesex factors," the Court must first address the "threshold issue" of whether the requested relief will interfere with the ongoing state judicial proceeding. Rossi, 489 F.3d. at 35; Conor B. ex rel. Vigurs v. Patrick, 2011 WL 31343 at *5 (D. Mass. Jan. 4, 2011).

Despite the clear language of Rossi v. Gemma, the Attorney General takes issue with the notion that interference is a threshold issue in the Younger context and points to Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22, 26 (1st Cir. 2009) (performing Younger analysis without consideration of interference as a threshold condition), Brooks v. New Hampshire, 80 F.3d 633, 637-38 (1st Cir. 1996) (same), and Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772, 777 (1st Cir. 1990) (same). This argument is unavailing. In all three cases cited by the Attorney General, the plaintiff had brought a federal suit either for the express purpose of fully enjoining one or more ongoing state proceedings, see Colonial Life, 572 F.3d at 24 (plaintiff sought an injunction barring further proceedings before the Massachusetts Commission Against Discrimination); Brooks, 80 F.3d at 636,

9

638 (plaintiff sought an injunction that would halt a pending paternity suit in state court, force the New Hampshire Supreme Court to dismiss a petition for review it had granted and on which it had scheduled argument, and prevent that court from exercising its contempt powers), or for the express purpose of invalidating a recently-handed-down state decision and enjoining the state agency to reverse the steps it had taken to enforce its decision, Bettencourt, 904 F.2d at 775. The presence of interference in these cases was so clear that any prolonged consideration of whether the threshold condition had been met likely would have been unnecessary surplusage. The court will adhere to the clear statement in Rossi that interference is a threshold issue. Rossi, 489 F.3d. at 35.

**A. Interference**

"Younger applies only when the relief asked of the federal court 'interferes' with the state proceedings." Rio Grande Cmty. Health Care Ctr., Inc. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005). Interference clearly exists where a plaintiff seeks a declaratory judgment that a pending state court proceeding, or the statute serving as its basis, is illegal or unconstitutional. Id. "Interference is thus usually expressed as a proceeding that either enjoins the state proceeding or has the practical effect of doing so." Id. (citations and quotations omitted).

The Attorney General identifies a helpful illustration of interference for Younger purposes by citing to McKenna v. Powell, 2010 WL 2474037 (D.R.I. Apr. 28, 2010), report and recommendation adopted by 2010 WL 2346619 (D.R.I. June 9, 2010). Since the Attorney General's filing, the case has been affirmed by the First Circuit, 631 F.3d 581 (1st Cir. 2011) (per curiam). In its ruling, the First Circuit described the case as "a paradigm for Younger abstention." Id. at 582. In McKenna, the same individual served as plaintiff in parallel state and federal court actions. 2010 WL 2474037 at *1. The two actions had some claims in common - namely, claims arising under

10

42 U.S.C. § 1983 and the Due Process and Takings clauses of the U.S. Constitution - but the state court action was broader than the federal action. Id. at *2. The narrower federal court action sought both a declaratory judgment holding that certain state workers' compensation laws were unconstitutional as applied to a class of employers including the plaintiff and an injunction forcing the state court judge presiding over plaintiff's state action to recuse himself. Id. at *4. On these facts, the court found that "th[e] element of interference is . . . easily met," id., for three seemingly independent reasons. First, holding that the state statute in question was inapplicable to the plaintiff "would arguably vitiate the Orders entered in the various [state court] proceedings." Id. Second, if the state court judge were forced to recuse himself, "it would also arguably void and invalidate all Orders issued in such proceedings" by that judge. Id. Third, "[p]laintiff has previously pursued his federal constitutional claims in [the state court] proceedings," and his "subsequent request that this Court weigh in on the same constitutional issues he has already pursued in state proceedings would surely interfere with those proceedings." Id.

The facts of the instant case are sufficiently close to those in McKenna to establish interference. Most importantly, the federal FAAAA preemption claim raised by MDA in this case was previously pursued by defendants in the pending state proceedings in Reynolds v. City Express, Inc., Okeke and Oliveira, as well as in the pending proceedings in Arrigo, which may be remanded back to state court in the future. A subsequent request that this Court weigh in on the same federal issue would interfere with pending and possibly incipient state court proceedings just as surely here as it did in McKenna.[6] Additionally, if this Court held that prong B of the Massachusetts

---

[6]At oral argument, counsel for MDA emphasized that here MDA's argument is focused solely on the B prong of the Massachusetts Independent Contractor statute, whereas in the state court proceedings defendants addressed the statute in its entirety. That does not distinguish the

11

Independent Contractor statute was inapplicable to same-day delivery service companies, such a holding would arguably vitiate the orders entered in state cases that turn on the question of FAAAA preemption, see, e.g., July 16 Order on Partial Summary Judgment in Oliveira, 2010 WL 4071360, at *8; June 7, 2010 Order on Defendant's Motion to Dismiss in Derochers, MICV 2009-04845 (Middlesex County Super. Ct., June 7, 2010), and any forthcoming actions or rulings taken on any state court defendant's asserted FAAAA preemption defense. The Court notes that, without the First Circuit's recent guidance in McKenna, the question of whether the relief sought by MDA would interfere, i.e., "enjoin[ a] state proceeding or have the practical effect of doing so," Rio Grande, 397 F.3d at 70, would be closer. But the facts of this case are similar to those in McKenna, which were, in the words of that court, sufficient to "easily" meet the threshold of interference, and given that the First Circuit has held up McKenna as a "paradigm" for analysis under the Younger doctrine, the Court finds that the interference threshold has been surmounted here.

**B. Middlesex factors**

1. Ongoing state judicial proceedings involving the federal plaintiff

The first Middlesex factor is whether "there is an ongoing state judicial proceeding." Middlesex, 457 U.S. at 432. First and foremost, the ongoing state proceedings must be "judicial (as opposed to legislative) in nature." Bettencourt, 904 F.2d at 777. Second, the proceedings must "'involv[e] the federal plaintiff.'" Colonial Life, 572 F.3d at 26.

As to the first component, the state proceedings in question are civil actions seeking to

---

instant case from McKenna, where the relief sought in federal court was narrower than the relief sought in state court. 2010 WL 2474037 at *2. More to the point, as in McKenna, the slightly narrower preemption claim in the instant action is still a subsequent request that this Court weigh in on the same federal issues already pursued more broadly in state proceedings. Id. at *4.

enforce the Massachusetts Independent Contractor statute, brought by private parties pursuant to the civil enforcement standing procedures set forth in the statute and administered by the Attorney General. M.G.L. c. 149, § 150. Such civil enforcement actions provide a basis for Younger abstention, Bettencourt, 904 F.2d at 777 n.6 (citing Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 14 n.12 (1986) (Younger abstention appropriate in ongoing civil enforcement proceedings not initiated by the state)), and are clearly judicial in nature. See Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 521 (1st Cir. 2009) (the type of "proceeding Younger is meant to protect must provide the parties involved with an opportunity to be heard and to present their version of the facts before a final determination is made[, that is,] a neutral fact-finding process").

As to the second component, although MDA is not a named party in any of the pending state actions, it is nonetheless sufficiently "involved" to satisfy the first Middlesex factor. In cases where federal plaintiffs "ha[ve] a substantial stake in the state proceedings, so much so that they s[eek] federal relief, demanding that the state statute be declared void," where "their interests and those of [the state court litigants a]re intertwined," and where the federal plaintiffs "could see to it that their federal claims were presented" in the state proceedings, "the requirements of Younger v. Harris c[an] not be avoided on the ground that no [state court proceeding] was pending against" the federal plaintiffs. Hicks v. Miranda, 422 U.S. 332, 348-49 (1975).

Here, MDA has initiated the instant federal action seeking to enjoin application of the B prong of the Massachusetts Independent Contractor statute for the express purpose of redressing not only the threatened injury to MDA members in peril of enforcement actions, but also the "*actual injury*" of "several MDA members [that] have been sued by private parties for allegedly misclassifying employees as independent contractors." Am. Compl. at ¶ 8 (emphasis added).

MDA's express interest in "protecting the industry's use of independent contractors," Am. Compl. at 9, is clearly intertwined with the individual state defendants' interest in protecting their own use of independent contractors. There is no reason to doubt that MDA would be entitled under Rule 24 of the Massachusetts Rules of Civil Procedure to intervene in the pending state court actions should the state parties fail to adequately represent their and MDA's shared interest.[7] Casa Marie, Inc. v. Super. Ct. of P.R. for the Dist. of Arecibo, 988 F.2d 252, 267 (1st Cir. 1993) (ability to intervene under state rules of civil procedure suggests presence of first Middlesex factor). The Court is thus bound to follow Hicks' admonition that Younger's requirements cannot be avoided on the ground that MDA is closely related to, rather than synonymous with, a number of the defendants in pending state court actions.

MDA points to Doran v. Salem Inn, Inc., 422 U.S. 922 (1975), to argue that MDA is sufficiently distinct from the state court defendants to preclude Younger abstention here. In Doran, issued only six days after Hicks, the Supreme Court refused to treat federal plaintiffs as alter egos of plaintiffs in a related state court action because the two sets of litigants were "apparently unrelated in terms of ownership, control, and management." 422 U.S. at 929. Here, on the other hand, there is significant overlap in terms of the control and management of the federal plaintiff and at least some of the defendants in pending state court actions. For example, the record reflects that the same individual who serves as the vice-president of federal plaintiff MDA also serves as the president, treasurer, secretary and director of state defendant City Express - indeed, the MDA Vice-President appears from the record to be City Express' sole corporate decisionmaker. MDA also

---

[7] The Court again notes that defendants in nearly all of the relevant state court actions have in fact put forth an FAAAA preemption defense similar to the one asserted here by MDA.

argues that its interests are broader than and therefore not intertwined with the interests of the state court defendants, but this argument is belied both by the record and by the fact that MDA derives its standing in this case solely from its members. Although the standard for establishing associational standing is distinct from the standard for having "intertwined" interests under Hicks, this litigating posture does not aid MDA's argument. See Casa Marie, 988 F.2d at 268 (plaintiff cannot simultaneously bring a claim which asserts that his interests are interconnected with other parties, then deny their close relationship for Younger purposes) (citing Collins v. Cty. of Kendall, 807 F.2d 95, 101-02 (7th Cir. 1986)). Doran explicitly recognized that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them," 422 U.S. at 498, and such circumstances are present here.[8]

    2. Important state interest

The second Middlesex factor is whether the ongoing state proceeding "implicates an important state interest." Rossi, 489 F.3d at 34-35. First Circuit precedent on this issue is clear. "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Laws affecting occupational health and safety, and workmen's compensation laws are only a few examples. . . . [F]ew matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power than the physical and economic protection of workers injured within its territory." Hartford Enters., Inc. v.

---

[8]MDA also cites to authority from the Second and Fifth Circuits on this point. Pl.'s Memo. in Opp. to Mot. to Dismiss at 10-11. To the extent that these authorities conflict with Rio Grande, 397 F.3d at 70; Colonial Life, 572 F.3d at 26; and Casa Marie, 988 F.2d at 267-68, the Court is bound to follow the latter.

Coty, 529 F. Supp. 2d 95, 99 (D. Me. 2008); see Colonial Life, 572 F. 3d at 26. MDA's out-of-circuit citations on this point are unavailing. Under the law of this Circuit, state proceedings relating to the protection and proper classification of Massachusetts workers implicate an important state interest. Accordingly, the second Middlesex factor is present.

### 3. Adequate opportunity for the federal plaintiff to advance its challenge

The third Middlesex factor is whether the ongoing state proceeding "provides an adequate opportunity for the federal plaintiff to advance his federal . . . challenge." Rossi, 489 F.3d at 35. "For the purposes of Younger abstention, [as to] the question [of] whether the state courts provide an adequate opportunity to litigate [federal] claims fully and fairly . . . [t]hat the Massachusetts courts provide such an opportunity cannot seriously be questioned." Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 665 (1st Cir. 2010); see also Johnson v. Bd. of Bar Overseers of Mass., 324 F. Supp. 2d 276, 283 (D. Mass. 2004) ("it cannot be doubted that the courts of the Commonwealth will give federal . . . issues the closest scrutiny"). The parties cannot seriously dispute the adequacy of the Massachusetts courts. MDA and its alter ego (for Younger purposes) members in ongoing state proceedings have an adequate opportunity to advance their federal claims. Accordingly, the third Middlesex factor is present.

### C. Extraordinary circumstances

When interference is present and the three Middlesex factors are satisfied, Younger abstention may still be avoided upon a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." Middlesex Co. Ethics Comm., 457 U.S. at 435. These categories of exceptions to the Younger doctrine "have been very narrowly construed." United Books, Inc. v. Conte, 739 F.2d 30, 34 (1st Cir. 1984). Two exceptions

are at issue here.

First, "a 'facially conclusive' claim of preemption may . . . be 'sufficient to render abstention inappropriate.'" Colonial Life, 572 F.3d at 26 (quoting New Orleans Pub. Serv. Inc. v. City of New Orleans, 491 U.S. 350, 366 (1989)). MDA argues that FAAAA preemption can be readily established on a facial reading of the FAAAA and the B prong of the Massachusetts Independent Contractor statute. But nothing in the B prong expressly purports to have the force of law relating to "intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker," as prohibited by the FAAAA, 49 U.S.C. § 14501(b)(1). Any FAAAA preemption in this case would thus be as-applied, not facial. As noted above, two state courts reviewing similar facts found no FAAAA preemption whatsoever. See Oliveira, 2010 WL 4071360, at *8; Derochers, MICV 2009-04845 (Middlesex County Super. Ct., June 7, 2010).

Second, abstention may be inappropriate in situations where "core constitutional values are threatened and there is a showing of irreparable harm that is both 'great and immediate,'" Maymó-Meléndez, 364 F.3d at 37 (quoting Younger, 401 U.S. at 46), such as a showing that "extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner." Esso Standard Oil Co. v. López-Freytes, 522 F.3d 136, 143 (1st Cir. 2008). MDA argues that the cost to its members of defending against private enforcement actions under the Massachusetts Independent Contractors statute, in addition to the treble damages and attorneys' fees which the statute imposes on liable parties, constitutes great and immediate irreparable harm. MDA offers no legal authority in support of this argument. There has been no allegation that the state courts presiding over the various private enforcement actions brought against MDA members will fail to protect the parties' constitutional interests or will impose without due process any statutorily-

17

required damages. The narrow exception set forth in <u>Maymó-Meléndez</u> and <u>Esso Standard Oil</u> does not apply.

Because the relief sought by MDA would interfere with ongoing state judicial proceedings that implicate an important state interest and that provide an adequate opportunity for the MDA or its alter egos to advance their federal preemption challenge and because no exceptions apply, this Court is required by <u>Younger</u> and its progeny to abstain from exercising its jurisdiction.

## IV. Conclusion

For the reasons discussed above, the Attorney General's motion to dismiss is GRANTED.

**So ordered.**

<u>/s/ Denise J. Casper</u>

United States District Judge