# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **MASSACHUSETTS DELIVERY ASSSOCIATION,** | ) ) ) | |
| **Plaintiff** | ) ) | |
| **v.** | ) ) | **Civil Action No. 10-11521-DJC** |
| **MARTHA COAKLEY, in Her Official Capacity as Attorney General of the Commonwealth of Massachusetts,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                          **September 26, 2013**

## I.      Introduction

Plaintiff Massachusetts Delivery Association ("MDA") has brought this action to bar enforcement of Mass. Gen. L. c. 149, § 148B(a)(2), otherwise known as the "B prong" of the Massachusetts Independent Contractor Statute (the "Statute").   MDA's amended complaint includes three counts:  Count I seeks injunctive relief barring the enforcement of the Statute because the Federal Aviation Administration Authorization Act ("FAAAA") preempts the Statute, D. 22 ¶¶ 28-34; Count II alleges that the commerce clause, U.S. Const. art. I, § 8, cl. 2, bars enforcement of the Statute because the Statute unduly burdens interstate commerce, id. ¶¶ 35-38; and Count III seeks a declaratory judgment that the FAAAA bars enforcement of the Statute, id. ¶¶ 39-42.

MDA has moved for summary judgment on its FAAAA preemption claim and its claim for a declaratory judgment regarding same. D. 67. The Massachusetts Attorney General has cross-moved for summary judgment as to all counts, arguing that MDA has failed to allege a case or controversy, D. 82, or in the alternative, has moved for additional discovery pursuant to Fed. R. Civ. P. 56(d). D. 80. In the event summary judgment is not granted in her favor, the Attorney General has also moved to compel additional deposition time and the further production of documents. D. 96. MDA has moved for a protective order as to certain third party subpoenas. D. 94. The Court DENIES MDA's motion for summary judgment, D. 67, and DENIES the Attorney General's cross-motion for summary judgment, D. 82, to the extent that it sought dismissal of this action on the grounds that this case did not present a justiciable case or controversy, but ALLOWS the relief requested by the Attorney General to the extent that Counts I and III are DISMISSED, D. 80 at 1, DENIES AS MOOT WITHOUT PREJUDICE the Attorney General's motion to compel, D. 96, and ALLOWS MDA's motion for a protective order, D. 94.

## II.     Burden of Proof and Standard of Review

### A.     Motion for Summary Judgment

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets her burden, the

non-moving party may not rest on the allegations or denials in his pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009).

**B.**     **Discovery Motions**

Trial courts have broad discretion to manage pretrial discovery.  <u>Poulin v. Greer</u>, 18 F.3d 979, 986 (1st Cir. 1994).  In general, provided that information is within the scope of Rule 26(b) and reasonably obtainable within the responding party's possession, custody or control, it is discoverable.  <u>Tyler v. Suffolk County</u>, 256 F.R.D. 34, 37 (D. Mass. 2009).  Under Rule 37(a), the party moving to compel discovery bears the burden of showing that the information is relevant.  <u>See</u> <u>Caouette v. OfficeMax, Inc.</u>, 352 F. Supp. 2d 134, 136 (D.N.H. 2005).

Although the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), a court is required to limit the frequency or extent of otherwise allowable discovery if the same information "can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . or [if] the burden or expense of the proposed discovery outweighs its likely benefit . . . ."  Fed. R. Civ. P. 26(b)(2)(C). Upon a showing of good cause, a court may issue a protective order limiting or preventing discovery. Fed. R. Civ. P. 26(c)(1).  In doing so, the court must "balance the burden of proposed discovery against the likely benefit."  <u>Gill v. Gulfstream Park Racing Ass'n</u>, 399 F.3d 391, 400 (1st Cir. 2005).

III.     **Background**

A.       **The Independent Contractor Statute**

The Statute provides, in relevant part that:

> (a) For the purpose of this chapter and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:--
>
> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact ["Prong A"]; and
>
> (2) the service is performed outside the usual course of the business of the employer ["Prong B"]; and
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ["Prong C"].

Mass. Gen. L. c. 149, § 148B.  Section (d) of the Statute imposes civil and criminal penalties for those who fail "to properly classify an individual as an employee according to this section and in so doing fail[] to comply, in any respect, with chapter 149, or section 1, 1A, 1B, 2B, 15 or 19 of chapter 151, or chapter 62B . . . [or] chapter 152".   Penalties for improperly classifying employees as independent contractors include "a fine of not more than $10,000, or . . . imprisonment for not more than six months for a first offense, and for a subsequent offense by a fine of not more than $25,000 or by imprisonment for not more than one year, or by both such fine and such imprisonment."  Mass. Gen. L. c. 149, § 27C.[1]

The sections of Mass. Gen. L. c. 151 to which the Statute applies require employers to, inter alia:  (1) pay employees a minimum wage of $8.00 per hour, Mass. Gen. L. c. 151, § 1; (2) pay employees overtime compensation of one and one half times the rate at which employees are

---

[1] The Statute provides that failure to comply with c. 152 will result in penalties as provided in that chapter.  Mass. Gen. L. c. 149, § 148B (citing Mass. Gen. L. c. 152, § 14).

regularly employed, Mass. Gen. L. c. 151, § 1A; (3) keep personnel records, Mass. Gen. L. c. 151, § 15.  In addition, various provisions of Mass. Gen. L. c. 149 require employers to provide employees with, <u>inter alia</u>:  (1) eight weeks of maternity leave, Mass. Gen. L., c. 149, § 105D; (2) 24 hours off to care for children or elderly relatives, Mass. Gen. L. c. 149, § 52D; (3) 30 minutes off for every six hours worked, Mass. Gen. L. c. 149, § 100; and (4) one day off every seven days, Mass. Gen. L. c. 149, § 47.  Finally, Mass. Gen. L. c. 152 requires employers to provide workers compensation insurance for their employees.  As employers are vicariously liable for the conduct of its employees, but not necessarily its independent contractors, <u>Corsetti v. Stone Co.</u>, 396 Mass. 1, 9-10 (1985), MDA alleges that reclassifying its contractors as employees would require its members to expend a significant amount of additional effort recruiting and screening employees "to avoid hiring individuals who may have a greater propensity to commit such torts."  D. 72 at 17.

### B. Factual Background

MDA is a non-profit trade organization whose members provide same-day delivery services.  D. 73 ¶ 1.  MDA's members engage independent contractor delivery drivers to deliver products throughout Massachusetts and across state lines.  <u>Id.</u>  X Pressman Trucking & Courier, Inc. ("Xpressman"), a delivery service company, is a member of MDA.  <u>Id.</u> ¶ 2.  MDA alleges that Xpressman provides both scheduled and unscheduled delivery services for its clients.  <u>Id.</u> ¶ 4.  MDA notes that Xpressman's on-demand delivery services are "variable and unpredictable." <u>Id.</u> ¶ 7.  Xpressman's independent contractor drivers are paid for each route they complete, as contrasted with employees whom Xpressman pays by the hour or week, who receive health insurance, 401(k) plan benefits and for whom Xpressman provides workers' compensation insurance, pays payroll taxes and makes unemployment insurance contributions.  <u>Id.</u> ¶¶ 11, 13.

MDA alleges that if Xpressman engaged its couriers as employees, Xpressman's annual labor costs would increase from $1,615,076 to $3,484,158.  Id. ¶ 37.  MDA alleges that this is true for several reasons:   (1) employees would have "dead time,"[2] in which they would be getting paid for working but not actively making a pick-up or delivery; (2) employers would be required to pay benefits, including health insurance, which Massachusetts employers must offer; (3) employers would be required to pay mileage compensation; (4) employers would need to provide workers compensation and unemployment insurance; and (5) employers would be required to pay payroll taxes.  Id. ¶¶ 29-36; D. 72 at 21.  These cost increases, MDA alleges, would force Xpressman to increase its prices to customers.  D. 73 ¶ 38

### C.  __Procedural History__

MDA commenced this action on September 7, 2010.  D. 1.  The Attorney General moved to dismiss this case on October 22, 2010 on the grounds that the Court was required to abstain from exercising jurisdiction under Younger v. Harris, 401 U.S. 37 (1971).  D. 9.  The Court granted this motion on April 8, 2011, but that the First Circuit reversed that decision on appeal. D. 37, 39, 44.  Upon remand, the parties then proceeded with discovery.

MDA has now moved for summary judgment, arguing that the FAAAA preempts the B prong of the Statute (which is the basis for Counts I and III of the amended complaint).  D. 67. The Attorney General has opposed this motion, D. 80, arguing that the FAAAA does not preempt the Statute and has asked for additional discovery pursuant to Federal Rule of Civil

---

[2] Because Xpressman currently engages its drivers on a per delivery basis, it pays drivers only for the time that they are actively engaged in a delivery.  D. 73 ¶¶ 8, 13.  By contrast, Massachusetts law requires employers to pay employees for time spent "on-call" if the employee is not "effectively free to use his or her time for his or her own purposes."  455 C.M.R. 2.03(2).

Procedure 56(d).[3]   In addition, she has cross-moved for summary judgment on all counts, arguing that the case does not present a justiciable case or controversy.  D. 82.

Since the parties moved for summary judgment, the Court has twice extended the deadline for fact and expert discovery.  D. 70 (extending deadline to January 18, 2013); D. 89 (extending deadline to March 30, 2013).  MDA has moved for a protective order as to certain third-party subpoenas to Xpressman customers.  D. 94.  In addition, the Attorney General moved to compel (1) additional deposition time as to Xpressman's designee under Fed. R. Civ. P. 30(b)(6), Michelle Cully; and (2) several categories of documents from Xpressman.  D. 96.  The Court heard oral argument on all pending matters on April 10, 2013 and took the matters under advisement.  D. 107.

## IV.   Discussion

### A.   This Case Presents a Justiciable Case or Controversy

In her cross-motion, the Attorney General argues that MDA has not alleged a justiciable case or controversy.  See U.S. Const. art. III, § 2.  The case or controversy requirement prevents courts from issuing advisory opinions.  Overseas Military Sales Crop., Ltd. v. Giralt-Armada, 503 F.3d 12, 16-17 (1st Cir. 2007).  This requirement limits "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process."  Flast v. Cohen, 392 U.S. 83, 95 (1968).  In the context of a declaratory judgment, for a dispute to rise to the level of a case or controversy, the dispute

---

[3] Fed. R. Civ. P. 56(d) provides that:  "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

must be of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).  By contrast, declaratory relief relative to the enforceability of a state statute is not available where the threat of state action is "imaginary, speculative, or chimerical."  Shell Oil Co. v. Noel, 608 F.2d 208, 213 (1st Cir. 1979) (citing Steffel v. Thompson, 415 U.S. 452, 468-74 (1974)).

The Attorney General points out that the Statute contains a three-prong test for whether a person is an independent contractor or an employee.  Even if the Court rules that the FAAAA preempts one prong of the Statute, she argues, this does not conclusively address whether the FAAAA preempts the entirety of the statute.  Thus, the Attorney General argues, "a ruling as to Prong B alone would only resolve a case or controversy if an employer had first established that it complied with the first and third part of the test."  D. 82 at 2.

The Court disagrees.  For MDA's members to classify their drivers successfully as independent contractors within the meaning of the Statute, they would need to meet each of the three prongs of the Statute – that (1) the drivers were free from the delivery companies' control; (2) the drivers perform services outside the delivery companies' usual course of business; and (3) the drivers are customarily engaged in an independently established trade of the same nature as that involved in the service performed.  Mass. Gen. L. c. 149, § 148B.  Failure to establish a single prong would doom the delivery company's classification of workers as independent contractors.  See Auwah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 82 (D. Mass. 2010) (noting that the burden is on employer to "establish each element" of the Statute).  In other words, each prong presents a barrier to the drivers' classification as independent contractors.  Thus, "a decision in favor of the plaintiff in this case would provide effectual relief because it would clear a barrier" to the classification of MDA's couriers as independent contractors.

8

Weaver's Cove Energy, LLC v. Rhode Island Coastal Resources Management Council, 589 F.3d 458, 469 (1st Cir. 2009) (finding that plaintiff had alleged case or controversy where it sought determination as to one of many steps in regulatory approval process).  The relief requested by the plaintiff therefore will "neither be 'advisory' nor 'irrelevant.'"  Id.  The Court therefore DENIES the Attorney General's motion for summary judgment, D. 82, to the extent she seeks to dismiss the action for failure to allege a case or controversy.

### B.   The FAAAA Does Not Preempt Prong B of the Statute

#### 1.   The Federal Aviation Administration Authorization Act

The FAAAA arises out of a decades-long congressional effort to deregulate various facets of interstate transportation, including air travel and trucking, which as instrumentalities of interstate commerce fall squarely within Congress's power to regulate commerce.  United States v. Lopez, 514 U.S. 549, 558 (1995); United States v. Ballinger, 395 F.3d 1218, 1226 (11th Cir. 2005) (noting that "[i]nstrumentalities of interstate commerce . . . include[e] automobiles, airplanes, boats and shipments of goods").  In 1978, Congress enacted the Airline Deregulation Act ("ADA") aiming to promote "maximum reliance on competitive market forces."  49 U.S.C. § 40101(a)(6).  The ADA preempts any State from enacting or enforcing "any law . . . relating to rates, routes, or services of any air carrier."  Morales v. Trans World Airlines, 504 U.S. 374, 378-79 (1992) (citations omitted).  In 1980, Congress enacted the Motor Carrier Act, deregulating trucking.  Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 368 (2008) (citing 94 Stat. 793).  Finally, in 1994, Congress enacted the FAAAA, borrowing language from the ADA as to preemption:  "[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier," but adding the phrase, "with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

2.     *MDA Has Not Demonstrated that the FAAAA Preempts the Statute*

For the FAAAA to preempt a state law, the state law must both:  (1) relate to prices, routes or services of a motor carrier; and (2) relate to the transportation of property.  49 U.S.C. § 14501(c)(1); see City of Columbus v. Ours Garages and Wrecker Serv., Inc., 536 U.S. 424, 428 (2002).  With respect to the first prong, courts have relied upon case-law relating to the FAAAA and ADA interchangeably.  Rowe, 552 U.S. at 370 (noting that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well") (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006)).

### a.  The Statute does not relate to the transportation of property

Unlike the ADA, FAAAA preemption applies only reaches to state statutes regulating the "transportation of property."  The Supreme Court recently clarified that the FAAAA does not preempt state law claims where the statute itself does not relate to the "movement of property." Dan's City Used Cars, Inc. v. Pelkey, --- U.S. ----, 133 S. Ct. 1769, 1779 (2013) (holding that the FAAAA did not preempt plaintiff's claims under a state consumer protection statute where the plaintiff alleged that the defendant wrongfully took possession of the plaintiff's car).  The Court noted that the FAAAA's preemption clause differs from the ADA's preemption clause in that it includes the words "with respect to the transportation of property," after "relating to . . . prices, routes or services," which "massively limits the scope of preemption" ordered by the FAAAA. Id. at 1778.  Prior to Dan's City, one plausible interpretation of the operative phrase was that the FAAAA would preempt state statutes where they had a significant effect on the prices, routes or services of those entities that transport property.  See Sanchez v. Lasership, Inc., No. 12-0246, 2013 WL 1395733, at *1 (E.D. Va. Apr. 4, 2013).  The Supreme Court's decision in Dan's City

10

has, however, foreclosed that line of reasoning.   Indeed, one court in this district recently rejected a virtually identical preemption argument on similar grounds.   Schwann v. FedEx Ground Package System, Inc., No. 11-11094, 2013 WL 3353776, at *3-4 (D. Mass. Jul. 3, 2013) (Stearns, J.).   In applying Dan's City, the Schwann court found that because the Statute does not relate to the movement of property, the FAAAA cannot preempt it.   Id.

The Court's analysis of this matter leads it to the same conclusion.   The Statute has a broad application to a swath of state wage and hour laws, which, in turn, apply to all employees regardless of the underlying industry.   See generally Mass Gen. L. c. 149, § 148B.   Thus, the Statute applies not only to the trucking industry, but also, inter alia, to the janitorial cleaning industry, see Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 614 (2013), the home heating industry, see Crocker v. Townsend Oil Co., Inc., 464 Mass. 1, 2 (2012) and even municipalities, see Dixon v. City of Malden, 464 Mass. 446, 447 (2013).   It does not address how MDA's members make deliveries, cf. Rowe, 448 F.3d at 80, nor the way their services are performed, cf. Brown, 720 F.3d at 62.   As such, the Statute "has nothing to do with the regulation of the 'carriage of property.'"   Schwann, 2013 WL 3353776 at *3 (quoting Dan's City, 133 S. Ct. at 1778).

MDA seeks to distinguish Dan's City by styling the Supreme Court's opinion as limiting the FAAAA's preemptive reach to industries that relate to the transportation of property.   D. 115 at 1[4] (arguing that Dan's City held that the FAAAA did not preempt New Hampshire consumer protection statute because "selling a car does not relate to the movement of property") (internal citation omitted).   Yet this argument is squarely at odds with the Supreme Court's finding that "it

---

[4] The parties have filed multiple Notices of Supplemental Authority along with additional relevant argument relative to each notice. D. 106,    110, 114, 115, 116, 118, 119, 120, 122. The Court is in receipt of each of these notices and has taken them into consideration in its analysis.

is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" Dan's City, 133 S. Ct. at 1778-79.[5]

MDA also argues that another recent Supreme Court case, Am. Trucking Ass'ns, Inc. v. City of L.A., Cal., --- U.S. ----, 133 S. Ct. 2096 (2013), compels an outcome in its favor. D. 115 at 2. In Am. Trucking, the Supreme Court held that the FAAAA preempted "concession agreements" governing the relationship between the Port of Los Angeles and trucking companies operating on the premises. Id. at 2100. These concession agreements contained a provision prohibiting these trucking companies from employing their drivers as independent contractors. Am. Trucking Ass'ns., Inc. v. City of L.A., 660 F.3d 384, 407 (9th Cir. 2011), rev'd in part sub nom. Am. Trucking, 133 S. Ct. at 2096. Yet by MDA's own admission, the defendant in that case chose not to appeal the Ninth Circuit's holding that the FAAAA preempted the Port of Los Angeles's all-out ban on the use of independent contractors. D. 115 at 2. As such, the operative issue in this case was not before the Supreme Court. Even if the Supreme Court had affirmed the Ninth Circuit in this respect, however, the ban at issue in Am. Trucking pertained only to employees of trucking companies moving property in and out of the Port of Los Angeles. As

---

[5] The Court is in receipt of MDA's most recent Notice of Supplemental Authority. D. 120, 122. To the extent that Burnham v. Ruan Transp., No. 12-00688-AG-AN, 2013 WL 4564496, at *5 (C.D. Cal. Aug. 16, 2013) (finding that California's meal and rest break laws were preempted by the FAAAA) could be said to stand for the proposition that state statutes relate to the transportation of property merely because they govern common carriers, the Court disagrees with that proposition. If that were true, then the limitation described in Dan's City would have no practical impact, as any regulation affecting operating costs would be preempted by the FAAAA. In the second case that MDA cites, Gennell v. Fedex Ground Package System, Inc., No. 05-145-PB, 2013 WL 4854362 (D.N.H. Aug. 21, 2013), the court rejected the argument that a state statute was preempted. Id. at *7 (citing Schwann, supra and Martins, infra). As such, this case supports the Attorney General's position, despite MDA's attempt to distinguish it.

such, the ban related directly to the "transportation of property."   49 U.S.C. § 14501(c)(1), which, as discussed above, the Statute does not.

### b. The Statute's impact on prices, routes and services is insufficient to find that the FAAAA facially preempts it

As the parties' briefing pre-dated the Supreme Court's decision in Dan's City, the Court will address the focus of the parties' briefing – the nexus between the Statute and motor carriers' prices, routes and services.  Nevertheless, the Court finds that even if the Statute did relate to the transportation of property, its connection to prices, routes and services is insufficient for the FAAAA facially to preempt it.

The FAAAA and ADA preempt state and local laws even where the state or local law's effect on a prices, routes or services "is only indirect."  Morales, 504 U.S. at 386.  State actions "having a connection with, or reference to" carrier "rates, routes, or services' are preempted." Id. at 384.  State laws are preempted where they have a "significant impact" related to Congress' deregulatory and preemption-related objectives.  Id. at 390.  Nor, as the Attorney General suggests, is FAAAA preemption limited to laws of general applicability.  Id.  In deciding preemption issues, courts focus on "Congress' overarching goal as helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'"  Rowe, 552 U.S. at 371 (quoting Morales, 504 U.S. at 378).

By contrast, the FAAAA and ADA do not preempt state laws affecting prices, routes or services in only a "tenuous, remote, or peripheral . . . manner," including generally applicable criminal statutes prohibiting, for example, gambling.  Id. at 390; see also N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 81 (1st Cir. 2006) (holding that the FAAAA does not preempt generally applicable statute prohibiting carriers from acting as "knowing accomplices to the

illegal sale of tobacco products," but finding that state may not "dictate the procedures that a carrier should employ to locate these products in its delivery chain"), aff'd, 552 U.S. 364 (2008).

Courts have, in many cases, held that the FAAAA and ADA preempt state and local statutes that address restraints on the employment relationship.  In DiFiore v. Am. Airlines, 646 F.3d 81, 83-84 (1st Cir. 2011), for example, airline porters brought suit against their employers alleging that the airline's $2 service charge for curbside baggage check-in violated the Massachusetts tip statute, Mass. Gen. L. c. 149, § 152A(f), in that the policy confused customers, who, the porters alleged, believed that the service charge was a gratuity awarded to the porters. Id.  The First Circuit held that employees' claims were preempted by the ADA because the tip statute, under plaintiffs' formulation, controlled how airlines displayed the prices for curbside baggage check-in.  Id. at 88-29.  Accordingly, the tip statute had a significant impact on how the airline provided the service.  The Court advised, however, that the ADA would not preempt claims "simply regulat[ing] the employment relationship between the skycaps and the airline," as opposed to those that have a direct connection to air carrier prices and services"—which the ADA would preempt because they are "related to a price, route or service."  Id. at 87.  The First Circuit similarly found that the ADA preempts similarly situated porters' claims of unjust enrichment and tortious interference.  Brown v. United Airlines, Inc., 720 F.3d 60, 62 (1st Cir. 2013).

Even the manner in which employers classify individuals performing services can fall within the ambit of FAAAA preemption.  Provided they relate to the transportation of property, local regulations requiring trucking companies to classify independent contractors as employees are likely preempted where they impose significant costs on employers where those costs are likely to either be passed onto consumers or alter the manner in which truckers provide their

services.  Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1056 (9th Cir.

2009) (reversing denial of preliminary injunction upon concluding that reclassification of

independent contractors as employees would increase prices for trucking services).   Indeed,

when faced with this very issue of whether the FAAAA preempts the Statute, one district court

found that the FAAAA preempts the Statute.   Sanchez, 2013 WL 1395733, at *1 (applying

Massachusetts law and finding that the Statute made on-call delivery services cost-prohibitive,

therefore dictating the services delivery services could provide).

        Recent decisions from judges in this district have, however, expressed skepticism at

preemption claims that seek to invalidate the Statute and other Massachusetts wage and hour

laws.  See Martins v. 3PD, Inc., No. 11-11313, 2013 WL 1320454, at *12 (D. Mass. Apr. 4,

2013) (Woodlock, J.) (concluding that "suggestion that FAAAA preempts wage laws because

they may have indirect impact on [] pricing decisions amounts to an invitation to immunize it

from all state economic regulation"); Schwann, 2013 WL 3353776, at *3-4 (same; distinguishing

Sanchez).   In addition, two Massachusetts trial courts have specifically addressed this issue and

have concluded that the FAAAA does not preempt Section 148B. See Derochers v. Staples, Inc.,

No. 09-04845, 2010 WL 6576214, *2–3 (Mass. Super. Ct. Jun. 8, 2010); Oliveira v. Advanced

Delivery Sys., Inc., No. 09-1311, 2010 WL 4071360, at *3–4 (Mass. Super. Ct. Jul. 16, 2010).

        The Court agrees that to find the "FAAAA preempts wage laws because they may have

an indirect impact on [a motor carrier]'s pricing decisions amounts to an invitation to immunize

it from all state economic regulation," Martins, 2013 WL 1320454, at *12, which is a position

that "the First Circuit specifically rejected."   Id.  (citing DiFiore, 646 F.3d at 89 (declining to

"endorse American [Airlines]'s view that state regulation is preempted wherever it imposes costs

on airlines and therefore affects fares because costs must be made up elsewhere . . . . This would

effectively exempt airlines from state taxes, state lawsuits of many kinds, and perhaps most other state regulation of any consequence.") (internal quotations omitted)).  Put simply, in drafting the FAAAA, Congress did not draft a blank check to the trucking industry protecting it from any state regulation that increases the cost of doing business.

Indeed, <u>Schwann</u> and <u>Martins</u> stand for the rejection of a categorical approach that wage laws will always affect market forces and therefore always affect prices.  The Court agrees that such a categorical approach is inappropriate and that MDA has failed to demonstrate that the Statute has "no valid application."  <u>McGuire v. Reilly</u>, 386 F.3d 45, 57 (1st Cir. 2004) (discussing standard for facial invalidity).  Indeed, "the FAAAA's preemption provision does not have infinite reach."  <u>Martins</u>, 2013 WL 1320454 at *12.  That a regulation on wages has the potential to impact costs and therefore prices is insufficient to implicate preemption.  <u>DiFiore</u>, 646 F.3d at 89 (rejecting argument that "state regulation is preempted wherever it imposes costs on airlines and therefore affects fares because costs must be made up elsewhere"); <u>see also</u> <u>S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.</u>, 697 F.3d 544, 559 (7th Cir. 2012) ("It is important in this connection to consider whether enforcement of a state law has a generalized effect on transactions in the economy as a whole, or if it affects only particular arrangements").  Those courts that have found that the FAAAA and ADA preempts state and local regulation of the employment relationship have done so on an "as-applied" basis.  <u>See, e.g.</u>, <u>Sanchez</u>, 2013 WL 1395733, at *13 (considering Statute's effect on defendant in isolation).

Here, it could be the case that for some of MDA's members, although reclassifying their drivers as independent contractors will increase costs, members will absorb those costs in other ways.  For example, member companies could trim their administrative staff, reduce overhead costs or alter the means by which employees are provided with salaries, wages and benefits.

None of these cost-cutting measures affects common carriers' prices, routes or services.  See DiFiore, 646 F.3d at 87 (identifying "direct connection to air carrier prices and services" as critical inquiry).  The Statute therefore may have multiple "valid application[s]."  McGuire, 386 F.3d at 57.  Thus, as here, where a law of general applicability merely has the potential to affect common carriers' prices, routes or services, the FAAAA does not preempt that law on its face.

MDA relies on Am. Trucking to contend otherwise.  However, the ban in that case specifically targeted truckers carrying cargo in and out of two distinct, albeit large ports on the California coast.  Am. Trucking, 559 F.3d at 1048.  In other words, the ban related directly regulated trucking.  Although the plaintiff in that case did not make an as-applied challenge to the independent contractor ban, the relief sought was relatively narrow as compared with the relief MDA seeks in this case and specific evidence related to the trucking industry.  MDA also argues that Central Transport, Inc. v. Pub. Serv. Comm'n, 566 N.W.2d 299 (Mich. App. 1997), suggests that the FAAAA facially preempts bans on independent contractors.  In that case, however, the procedural posture was fundamentally different than the posture of the case at bar, in that the Michigan Court of Appeals was reviewing a state regulatory agency's conclusion that the FAAAA preempted certain state laws.  Id. at 307.  The standard of review in that case was particularly deferential.  Id. at 308 (finding that regulatory agency's "conclusion in this regard was . . . not unlawful or unreasonable").

### c.  Neither MDA's as-applied challenge nor its policy arguments are persuasive

MDA has also raised an as-applied challenge.  This challenge focuses on increased labor costs Xpressman, one of its members, would incur as a result of reclassifying its independent contractor couriers as employees.  D. 72 at 11.  MDA relies in large part on Sanchez, but Sanchez was decided prior to the Supreme Court's decision in Dan's City and it is not clear that

the <u>Sanchez</u> court would have found that the FAAAA preempts the Statute had the Supreme Court's decision preceded its own. Ultimately, the Statute's effect on Xpressman's labor costs is immaterial. Even if the impact was "significant," <u>Rowe</u>, 552 U.S. at 375, this would not change the fact that the Statute does not relate to the "movement of property." <u>Dan's City</u>, 133 S. Ct. at 1779; <u>see supra</u> at § IV.c.2.a.

Finally, as a matter of policy, MDA warns that the Statute is inconsistent with other states' laws regarding the distinction between independent contractors and employees. MDA argues that "to allow Massachusetts to create its own rules for who is or is not a contractor-courier 'would allow other States to do the same . . . [and] lead to a patchwork of state service-determining laws, rules, and regulations.'" D. 72 at 9 (quoting <u>Rowe</u>, 552 U.S. at 373). Yet the singular manner in which the Massachusetts legislature has chosen to define "employees" does not bear on whether the Statute has a "significant impact" on prices, routes and services. <u>Rowe</u>, 552 U.S. at 375. MDA has not demonstrated that a ban on the use of independent contractors would have such an impact as to have "no valid application." <u>McGuire</u>, 386 F.3d at 57 (discussing facial challenges to statutes). Indeed, where state statutes do not implicate preemption or other constitutional concerns, the Supreme Court has approved of the notion of "states as laboratories" as one of the hallmarks of modern federalism. <u>Gonzales v. Raich</u>, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting) (quoting <u>New State Ice Co., v. Liebmann</u>, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) (noting that "[o]ne of federalism's chief virtues, of course, is that it promotes innovation by allowing for the possibility that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country"). Put another way, a state is free to enact laws that conflict with another state's laws as long as it does not work to unstitch any federal

regulation.  MDA's concern in this regard is therefore unavailing.  The Court therefore DENIES

MDA's motion for summary judgment, D. 67 and ALLOWS the relief requested by the Attorney

General to the extent that Count I, MDA's request that the Court enjoin enforcement of the

Statute, and Count III, MDA's claim for a declaratory judgment that the FAAAA preempts the

Statute, should be DISMISSED on the merits.  D. 80 at 1.

### C.      The Attorney General's Motion to Compel is Moot

The Attorney General's motion to compel seeks additional deposition time and

documents from Xpressman.  According to the Attorney General, "[t]his information is directly

relevant to . . . the preemption question before this court" because "MDA must show that [the

Statute] significantly impacts Xpressman's prices, routes, or services." D. 97 at 3.  Indeed, MDA

has articulated that Xpressman's involvement in this lawsuit merely bears upon its preemption

claim.  D. 72 at 11 et seq.  Accordingly, the Attorney General has only articulated the relevance

of the proposed discovery to the extent it bears upon Counts I and III of the Amended Complaint.

See D. 22 at 9-11.

Now that the Court has granted summary judgment to the Attorney General on Counts I

and III, and with no clear articulation as to how the proposed discovery relates to Count II, the

Court DENIES AS MOOT WITHOUT PREJUDICE the Attorney General's motion to compel.

### D.      MDA is Entitled to a Protective Order

The Attorney General has propounded third party subpoenas on two Xpressman

customers seeking the following information:

> 1.  Documents concerning or reflecting any recommendation, suggestion, inquiry, or requirement since January 1, 2009 to Xpressman Trucking & Courier, Inc. regarding classifying delivery drivers as independent contractors or employees;
>
> 2.  Documents concerning or reflecting any recommendation, suggestion, inquiry or requirement since January 1, 2009 to Xpressman Trucking & courier, Inc. regarding the pay of delivery drivers;

3.   Documents concerning or reflecting the requirements . . . as to how Xpressman Trucking & Courier, Inc. handles or services its routes;

4.   Documents concerning or reflecting changes in routes handled by or serviced by Xpressman Trucking & Courier, Inc. since January 1, 2009;

5.   Copies of contracts or agreements with Xpressman Trucking & Courier, Inc. concerning or reflecting the pricing of routes or . . . expectations or requirements with respect to those routes.

D. 95-1 at 1-2.  MDA, on Xpressman's behalf, has moved for a protective order, arguing that the Court should quash these subpoenas because they are not likely to lead to the discovery of admissible evidence and aim to disrupt Xpressman's customer relationships.

### 1.     MDA Has Standing to Move for a Protective Order

The Attorney General argues that neither MDA nor Xpressman has standing to move for a protective order.  Rule 26(c)(1) ostensibly limits standing to "part[ies] . . . from whom discovery is sought."  However, courts have relaxed this requirement where the moving party can show a "claim of personal right or privilege regarding the production or testimony." Accusoft Corp. v. Quest Diagnostics, Inc., No. 12-40007, 2012 WL 1358662, at *10 (D. Mass. Apr. 18, 2012).  Here, MDA and Xpressman (a member of MDA) have claimed a personal right. MDA argues that dragging Xpressman's customers into this litigation could damage Xpressman's relationships with its customers.  The Court agrees that Xpressman's customers might resent the expense and hassle of responding to third party discovery and that these frustrations could damage Xpressman's relationships with their customers.  According, the Court finds that MDA has standing to move for a protective order.[6]

---

[6] Although the motion for a protective order is titled "Xpressman Trucking & Courier, Inc.'s Motion for a Protective Order," it is signed by MDA.  D. 94.

### 3. The Attorney General's Requests Are No Longer Relevant in Light of the Court's Dismissal of Counts I and III

Prior to the Court's dismissal of Counts I and III, these categories of documents would have been relevant.   Request 2 addresses the pay of delivery drivers – an element of Xpressman's costs; request 3 addresses how Xpressman handles or services its routes; request 4 addresses the manner in which Xpressman changes its routes; and request 5 addresses the pricing of routes.   As the Court has dismissed Counts I and III, these requests are outside the scope of the remaining discoverable issues in this case.   As such, the Court ALLOWS the motion for a protective order.

Nevertheless, the Court declines to award fees and costs to MDA.   "An award of expenses under [Rule 37(a)(5)] is a sanction imposed on a litigant for his failure to cooperate with discovery where no 'substantial justification' exists for his failure to cooperate."   Indus. Aircraft Lodge 707, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Technologies Corp., Pratt & Whitney Aircraft Div., 104 F.R.D. 471, 473 (D. Conn. 1985) (quoting 4A Moore's Federal Practice, ¶ 37.02[10] (2d ed. 1984)); Fed. R. Civ. P. 26(c)(3) (applying Rule 37(a)(5)'s standard for sanctions to motions for protective orders).   Here, given that the Court has dismissed Counts I and III, the discovery that the Attorney General sought is moot.   However, there may have been merit to the Attorney General's discovery requests absent dismissal.   Thus, there was "substantial justification" for the discovery that the Attorney General sought.   Indus. Aircraft Lodge, 104 F.R.D. at 473.   The Court finds it inappropriate to award fees and costs under these circumstances.[7]

---

[7] MDA's Motion for Leave to File a Reply in Support of Its Motion for a Protective Order, D. 102, is ALLOWED.   The Court considered the reply memorandum attached to this motion for leave in addressing the motion for a protective order, D. 94.

**V.      Conclusion**

For the foregoing reasons, the Court DENIES MDA's motion for summary judgment, D. 67, and DENIES the Attorney General's cross-motion for summary judgment, D. 82, to the extent that it sought dismissal of this action on the grounds that this case did not present a justiciable case or controversy, but ALLOWS the relief requested by the Attorney General to the extent that Counts I and III are DISMISSED.  <u>See</u> D. 80 at 1.  The Court also and DENIES AS MOOT WITHOUT PREJUDICE the Attorney General's motion to compel, D. 96, and ALLOWS MDA's motion for a protective order.  D. 94.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
